WOMANCARE OF SOUTHFIELD, P.C., Northland Family Planning Clinic, Inc., Northland Family Planning Clinic, Inc.—West, Northland Family Planning Clinic, Inc.—East, Scottsdale Womens Center, and Marshall D. Levine, M.D., Plaintiffs,

v.

Jennifer M. GRANHOLM, James T. Cherry, Carl L. Marlinga, David G. Gorcyca, and John D. O'Hair, Defendants.

and

Mark I. Evans, M.D. Planned Parenthood of Mid–Michigan, Planned Parenthood of Southeast Michigan, Planned Parenthood of South Central Michigan, Planned Parenthood Affiliates of Michigan, and Timothy R.B. Johnson, M.D., Plaintiffs,

v.

Jennifer M. Granholm, and John D. O'Hair, Defendants.

Nos. 00–CV–70585, 00–CV–70586.

United States District Court, E.D. Michigan, Southern Division.

April 26, 2001.

Tracie D. Palmer, David S. Steingold Assoc., Detroit, MI, for Plaintiffs.

R. Philip Brown, Ronald J. Styka, Santiago Rios, Michigan Department of Attorney General Public Health Division, Lansing, MI, Daniel W. Grow, Damm & Tauscher, Detroit, MI, Frank J. Krycia, Macomb County Corporation Counsel, Mount Clemons, MI, Jody L. Strutz, County of Oakland Prosecutor's Office, Pontiac, MI, William G. Pierson, Oakland County Corporation Counsel, Pontiac, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER

TARNOW, District Judge.

### GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENTLY ENJOINING DEFENDANTS FROM ENFORCING MICHIGAN'S "INFANT PROTECTION ACT", 1999 Mich.Pub.Acts 107, CODIFIED AT MICH.COMP. LAW § 750.90g

## I. Introduction

These two cases are consolidated and are before the Court on the plaintiffs' Motion for Summary Judgment. Plaintiffs are physicians practicing obstetrics and gynecology, and providers of women's reproductive health services. The sole remaining defendant is Jennifer Granholm, in her official capacity as the Attorney General for the State of Michigan.

On March 9, 2000, the Court issued a preliminary injunction prohibiting Attorney General Granholm and the State of Michigan from enforcing Michigan's "Infant Protection Act", 1999 Mich.Pub.Acts 107, codified at Mich.Comp.Law § 750.90g. The injunction was to remain in effect until further Order of this Court.

The Court finds that Michigan's "Infant Protection Act" fails to include adequate safeguards to protect the health of the pregnant woman. Therefore, the Court GRANTS Plaintiffs' Motion for Summary Judgment and permanently enjoins Attorney General Jennifer Granholm and the State of Michigan from enforcing the "Infant Protection Act", 1999 Mich.Pub.Acts 107, codified at Mich.Comp.Law § 750.90g.

## II. Background

The pertinent facts of this case were set forth in detail in this Court's March 9, 2000 Opinion and Order. The standing of the plaintiffs to bring this cause of action, the types and descriptions of the procedures performed, and the language of Michigan's "Infant Protection Act" remain unchanged from March 9, 2000 to the present. Therefore, the Court adopts by reference the findings of fact, the description of the parties, the joint stipulated statements of facts, and the summary of the testimony of Timothy Johnson, M.D., as previously recited at pages 4–26 of the Court's March 9, 2000 Opinion and Order.

## III. Standard of Review

Summary judgment, "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law", Fed.R.Civ.P. 56(c).

## IV. Analysis

### A. *Stenberg v. Carhart*

On January 14, 2000, the United States Supreme Court granted *certiorari* in *Stenberg v. Carhart*, 528 U.S. 1110, 120 S.Ct. 865, 145 L.Ed.2d 725 (2000). The United States Court of Appeals for the Eighth Circuit, in *Carhart v. Stenberg*, 192 F.3d 1142 (8th Cir.1999), had affirmed the decision of the District Court, declaring Nebraska's state law banning partial-birth

abortions to be unconstitutional. The order preliminarily enjoining enforcement of Michigan's Infant Protection Act was entered March 9, 2000. The decision of this Court regarding permanent injunctive relief was stayed pending the Supreme Court's decision in *Stenberg v. Carhart.*

On June 28, 2000, the United States Supreme Court published its opinion in *Stenberg v. Carhart*, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000). The Supreme Court affirmed the Eighth Circuit, holding that the Nebraska partial-birth abortion statute violated the United States Constitution. The Nebraska statute was declared unconstitutional both because it unduly burdened a pregnant woman's right to choose a pre-viability abortion, and because the statute failed to provide adequate protection to protect both the life and the health of the pregnant woman. *Carhart, supra*, 530 U.S. at 929–30, 120 S.Ct. 2597.

## B. The Michigan Statute

The Michigan "Infant Protection Act", 1999 Mich.Pub.Acts 107, codified at Mich. Comp.Law § 750.90g, states:

Sec. 90g. (1) This section shall be known and may be cited as the "infant protection act".

(2) The legislature finds all of the following:

(a) That the constitution and laws of this nation and this state hold that a live infant completely expelled from his or her mother's body is recognized as a person with constitutional and legal rights and protection.

(b) That a live infant partially outside his or her mother is neither a fetus nor potential life, but is a person.

(c) That the United States supreme court decisions defining a right to terminate pregnancy do not extend to the killing of a live infant that has begun to emerge from his or her mother's body.

(d) That the state has a compelling interest in protecting the life of a live infant by determining that a live infant is a person deserving of legal protection at any point after any part of the live infant exists outside of the mother's body.

(3) Except as provided in subsections (4) and (5), a person who intentionally performs a procedure or takes any action upon a live infant with the intent to cause the death of the live infant is guilty of a felony punishable by imprisonment for life or any term of years or a fine of not more than $50,000.00, or both.

(4) It is not a violation of subsection (3) if a physician takes measures at any point after a live infant is partially outside of the mother's body, that in the physician's reasonable medical judgment are necessary to save the life of the mother and if every reasonable precaution is also taken to save the live infant's life.

(5) Subsection (3) does not apply to an action taken by the mother. However, this subsection does not exempt the mother from any other provision of law.

(6) As used in this section:

(a) "Live infant" means a human fetus at any point after any part of the fetus is known to exist outside of the mother's body and has I or more of the following:

(i) A detectable heartbeat.

(ii) Evidence of spontaneous movement.

(iii) Evidence of breathing.

(b) "Outside of the mother's body" means beyond the outer abdominal wall or beyond the plane of the vaginal introitus.

(c) "Part of the fetus" means any portion of the body of a human fetus that has not been severed from the fetus, but

not including the umbilical cord or placenta.

(d) "Physician" means an individual licensed to engage in the practice of allopathic medicine or the practice of osteopathic medicine and surgery under article 15 of the public health code, 1978 PA 368, M.C.L. § 333.16101 to 333.18838.

■ Any law restricting a woman's right to choose a pre-viability abortion must contain an adequate safeguard to protect the life and health of the pregnant woman. "Since the law requires a health exception in order to validate even a post-viability abortion regulation, it at a minimum requires the same in respect to pre-viability regulation." *Carhart, supra,* 530 U.S. at 930, 120 S.Ct. 2597, *citing Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) and *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). "[A] State may promote but not endanger a woman's health when it regulates the methods of abortion." *Carhart, supra,* 530 U.S. at 931, 120 S.Ct. 2597, *citing Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 768–769, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986); *Colautti v. Franklin,* 439 U.S. 379, 400, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 76–79, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *and Doe v. Bolton,* 410 U.S. 179, 197, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

■ Plaintiffs, in their motion for summary judgment, assert that the Michigan statute is unconstitutional because it does not include an adequate exception where the health of the pregnant woman may be in jeopardy. The "Infant Protection Act" does state that the Act is not violated if, "in the physician's reasonable judgment [the measures] are necessary to save the life of the mother ..." Mich.Comp.Laws § 750.90g(4). However, the statute fails to contain an exception which would except the physician from liability, if the measures are necessary to protect the health of the pregnant woman.

Federal courts, reviewing state abortion regulations, have held that statutes which seek to regulate abortion must contain an adequate exception to protect the health of the pregnant woman. "The legislature's failure to include the health exception could prevent physicians from exercising appropriate medical judgment as to some post-viability abortions. This has rather obvious constitutional implications." *Eubanks v. Stengel,* 28 F.Supp.2d 1024, 1042 (W.D.Ky.1998). The district court's decision was affirmed by the Sixth Circuit. *Eubanks v. Stengel, et al.,* 224 F.3d 576 (6th Cir.2000). The Fourth Circuit also affirmed a district court's decision declaring Virginia's partial-birth abortion statute unconstitutional, based in part on the statute's failure to include an exception to protect the health of the pregnant woman. *Richmond Medical Center for Women v. Gilmore,* 224 F.3d 337 (4th Cir.2000).

Statutes restricting or regulating abortion in at least nine other states, in addition to Kentucky and Virginia, have been invalidated by federal courts on constitutional grounds. These decisions were based, at least in part, on the failure of the statutes to contain an adequate exception to protect the health of the pregnant woman. Those states include: Ohio (*Women's Medical Professional Corp. v. Taft,* 114 F.Supp.2d 664 (S.D.Ohio 2000)); West Virginia (*Daniel v. Underwood,* 102 F.Supp.2d 680 (S.D.W.Va.2000)); Arizona (*Planned Parenthood of Southern Arizona, Inc. v. Woods,* 982 F.Supp. 1369 (D.Ariz.1997)); Florida (*A Choice for Women v. Butterworth,* 54 F.Supp.2d 1148 (S.D.Fla.1998)); Louisiana (*Causeway*

*Medical Suite v. Foster,* 43 F.Supp.2d 604 (E.D.La.1999)), *affirmed* 221 F.3d 811 (5th Cir.2000); New Jersey (*Planned Parenthood of Cent. New Jersey v. Verniero,* 41 F.Supp.2d 478 (D.N.J.1998)), *affirmed Planned Parenthood of Central New Jersey v. Farmer,* 220 F.3d 127 (3rd Cir.2000); Rhode Island (*Rhode Island Medical Society v. Whitehouse,* 66 F.Supp.2d 288 (D.R.I.1999)), *affirmed* 239 F.3d 104 (1st Cir.2001); Iowa (*Planned Parenthood of Greater Iowa, Inc. v. Miller,* 30 F.Supp.2d 1157 (S.D.Iowa 1998), *affirmed on other grounds,* 195 F.3d 386 (8th Cir.1999), *cert. denied* 530 U.S. 1274, 120 S.Ct. 2801, 147 L.Ed.2d 1004 (2000)); and Alabama (*Summit Medical Associates v. Siegelman,* 130 F.Supp.2d 1307 (M.D.Ala.2001)). The State Supreme Court of Tennessee also enjoined enforcement of a state abortion statute, based on the holding in *Carhart* and the failure of the Tennessee statute to contain a health exception. *Planned Parenthood of Middle Tennessee v. Sundquist,* 38 S.W.3d 1 (Tenn.2000).

Plaintiffs contend that the language of the "Infant Protection Act," "necessary to save the life of the mother" is not an effective exception, because it does not permit a banned act or procedure, even when necessary to protect the health of the pregnant woman. The plaintiffs also point to the requirement that the measure must be "necessary" according to the physician's reasonable medical judgment. Plaintiffs argue that physicians will be hesitant to perform these procedures only to face criminal penalties later, if in hindsight, the procedure is determined not to have been "reasonable" or "necessary".

The Michigan statute, on its face, does not provide any exception to protect the health of the pregnant woman. As interpreted by at least one medical practitioner, Michigan's "Infant Protection Act" also does not provide an implied exception to protect the health of the pregnant woman. Plaintiff Timothy Johnson, M.D. testified at the March 2, 2000 hearing. The Court recognized Dr. Johnson as an expert witness. Dr. Johnson testified that, in his own practice, he performs abortion procedures.

Counsel for Plaintiffs elicited opinion testimony from Dr. Johnson. Dr. Johnson testified that, "if physicians were inhibited or prevented from doing a medically appropriate procedure on a woman to preserve her health, I think that would have a pretty obvious effect on that woman's health." In his opinion, Dr. Johnson stated that women who seek abortions, "would either seek illegal abortions, they would have later abortions that they obtained somewhere else, and that the morbidity and mortality from those events, the health complications and the death complications, would also increase."

Counsel for Plaintiffs directed Dr. Johnson to review Section Four of Michigan's "Infant Protection Act." Specifically, counsel referred to the statement that Section Three of the Act is not violated if the physician takes measures that, "in the physician's reasonable medical judgment are necessary to save the life of the mother and if every reasonable precaution is also taken to save the live infant's life." Mich. Comp.Laws § 750.90g(4). Dr. Johnson was asked for his medical opinion as to whether this section of the Act adequately protects the health of a pregnant woman. Dr. Johnson stated:

> Well, there's no exception in that section for the health of the mother. The only exception is the life of the mother. So, as I read it, I could exercise my reasonable judgment to save the mother's life if I thought that her life was immediately at risk, but not her health, as I read this statute.

Dr. Johnson also testified that he was uncertain as to who would interpret what constitutes "reasonable medical judgment," within the context of the statute. His testimony was that, if he were ever prosecuted under the Act, he would fear that his "best medical judgment" could be second-guessed or criticized as unreasonable or not necessary, by some physician testifying as a witness for the prosecution. The physician may fear that taking what he believes to be the most medically appropriate action, but perhaps not the only available action, may result in prosecution under the Act.

The Supreme Court's holding in *Carhart* is clear—a state may regulate abortion, as long as the regulation or prohibitive legislation carves out an exception for actions taken which are necessary to preserve the life and/or health of the pregnant woman. *Carhart, supra,* 530 U.S. at 930–31, 120 S.Ct. 2597. Defendant Granholm does not assert that the Act contains an adequate health exception. Rather, the defendant argues that *Carhart* is not applicable to the Michigan statute for two reasons.

■ First, Defendant Granholm asserts, the Supreme Court, in *Carhart,* did not consider the "personhood" of the partly-born infant. Second, the defendant argues that *Carhart* applies only to infants that have partially left the uterus of the mother. The defendant seeks to distinguish *Carhart* from the Michigan statute which, as interpreted by the Attorney General, applies to infants that have partially left the body (as opposed to the uterus) of the mother. The defendant urges this Court to accept the Attorney General's construction of the statute, as to the scope or meaning of the "Infant Protection Act." However, "case law makes clear that we are not to give the Attorney General's interpretative views controlling weight."

*Carhart, supra,* 530 U.S. at 940, 120 S.Ct. 2597.

Defendant argues that "any application of the IPA to D & X and some rare D & E (only one by Dr. Johnson) abortion procedures is constitutionally permissible." The defendant implies that the statute is constitutional without an express exception to protect the health of the pregnant woman. The Attorney General's argument, however, is in direct contravention of the holding in *Carhart* that:

[w]here a significant body of medical opinion believes a procedure may bring with it greater safety for some patients and explains the medical reasons supporting that view, we cannot say that the presence of a different view by itself proves the contrary. Rather, the uncertainty means a significant likelihood that those who believe that D & X is a safer abortion method in certain circumstances may turn out to be right. If so, then the absence of a health exception will place women at an unnecessary risk of tragic health consequences.

*Carhart, supra,* 530 U.S. at 937, 120 S.Ct. 2597.

The Michigan statute does not contain language which excepts a physician from exposure to criminal liability when the procedures are necessary to protect the physical or mental health of the pregnant woman. The holding in *Carhart, supra,* is controlling in this case. A physician who violates the "Infant Protection Act" may be found, "guilty of a felony punishable by imprisonment for life or any term of years or a fine of not more than $50,000.00 or both." Michigan physicians, who perform the abortion procedures described in the statute, would fear conviction and punishment for performing those procedures, even if the physicians' actions were necessary to protect the health of the pregnant woman.

## V. Conclusion

It is clear that the Michigan statute fails to contain an adequate exception to protect the mental and/or physical health of the pregnant woman. The Court finds that there are no genuine issues of material fact, with respect to the lack of a health exception in the statute, which would preclude judgment as a matter of law in this case. The United States Supreme Court's decision in *Stenberg v. Carhart* is controlling. Consequently, Plaintiffs' Motion for Summary Judgment IS HEREBY GRANTED.

The effect of the Michigan Act is to place an undue burden on a pregnant woman's right to make a decision regarding abortion. Therefore, for that reason, and for the reasons previously stated in this Court's March 9, 2000 Opinion and Order, the Court holds that the Michigan "Infant Protection Act," codified at Mich. Comp.Law § 750.90g, is unconstitutional. Therefore,

IT IS HEREBY ORDERED that Defendant Michigan Attorney General Jennifer Granholm, in her official capacity, and the State of Michigan ARE PERMANENTLY RESTRAINED AND ENJOINED from enforcing any provision of Mich.Comp.Law § 750.90g, the Michigan "Infant Protection Act."

Judgment Shall Be Entered Accordingly.