# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MELISSA LEE JONES,

Defendant-Appellant.

FOR PUBLICATION
September 29, 2016
9:00 a.m.

No. 332018
St. Joseph Circuit Court
LC No. 15-019724-FC

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Defendant, Melissa Lee Jones, pleaded guilty to first-degree child abuse, MCL 750.136b(2), and the trial court sentenced her to 3 to 10 years' imprisonment with credit for 208 days served. Defendant now appeals her conviction by leave granted. We agree with defendant's argument that the first-degree child abuse statute does not apply to her conduct at issue, and thus, we vacate her conviction and sentence.

This case arises out of defendant's delivery of a baby who tested positive for methamphetamine at birth. After defendant gave birth, the hospital staff became concerned about the baby because he weighed less than four pounds, despite being delivered at full term. The baby was weak, had trouble feeding, and required an IV to receive nutrition. Defendant did not participate in any prenatal care. CPS arrived at the hospital after being informed of the baby's condition and that the baby tested positive for methamphetamine. After speaking with the CPS worker, defendant took out her IVs and left the hospital with her boyfriend against the advice of hospital staff and against the recommendation of CPS. When police arrived at the hospital regarding the abandoned newborn, defendant had not come back to the hospital for her baby. A court order subsequently placed the child under protection and prohibited contact with defendant.

Defendant was charged with child abuse arising out of her prenatal conduct. During the plea hearing, the factual basis for her guilty plea was established as follows:

> [*The Court*]. I need you to tell me what you did that makes you guilty of the offence. It says that in January 29th, 2015 [sic] you were in the city of Sturgis, county of St. Joseph, state of Michigan, is that true?
>
> [*Defendant*]. Yes

-1-

[*The Court*]. At that time, you did knowingly or intentionally cause serious physical harm to a child. Tell me what happened?

[*Defendant*]. I was using in my pregnancy and my baby tested positive.

[*The Court*]. When was your baby born?

[*Defendant*]. The 28th at . . .

[*The Court*]. And . . .

[*Defendant*]. . . . 11:54, I think.

[*The Court*]. January 28th?

[*Defendant*]. Yes.

[*The Court*]. In Sturgis?

[*Defendant*]. Yes.

[*The Court*]. And they ran tests, is that correct?

[*Defendant*]. Uh-huh.

[*The Court*]. Yes?

[*Defendant*]. Yes.

[*The Court*]. And it tested positive for amphetamines and methamphetamines?

[*Defendant*]. Yes.

[*The Court*]. And then they tested you?

[*Defendant*]. Yes.

[*The Court*]. And you were also positive for methamphetamines and amphetamines?

[*Defendant*]. Yes.

[*The Court*]. When had you last used before you delivered your child?

[*Defendant*]. I don't—like five days before I was . . .

[*The Court*]. Five?

[*Defendant*].    Yeah.

[*The Court*].    Or less—was it less or was it five?

[*Defendant*].    I—I'm just guessing around five.

[*The Court*].    Okay.  But you do admit that you consumed it knowing . . .

[*Defendant*].    Yes.

[*The Court*].    Okay.  Are counsel satisfied that a factual basis has been established?

[*Prosecutor*].    Yes, Your Honor.

[*Defense Counsel*].    I am satisfied.


On appeal, defendant first argues that the first-degree child abuse statute was improperly applied to her because a fetus is not included within the statutory definition of "child," and she therefore could not have caused harm to a "child" as required by the statute simply by using methamphetamine during her pregnancy.  We agree.

Defendant did not preserve this issue by challenging in the trial court the applicability of the first-degree child abuse statute to her conduct.  See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).  Issues of statutory interpretation are reviewed de novo.  *People v Wambar*, 300 Mich App 121, 124; 831 NW2d 891 (2013).  "Whether conduct falls within the statutory scope of a criminal statute is a question of law that is reviewed de novo on appeal."  *People v Rutledge*, 250 Mich App 1, 4; 645 NW2d 333 (2002).  However, unpreserved issues are reviewed for plain error affecting substantial rights.  *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).  On plain-error review, the burden is on the defendant to establish (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *Id*. at 763.  "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse," but "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."  *Id*. (quotation marks and citation omitted).

In eliciting a factual basis from defendant during the plea colloquy, the trial court clearly focused on defendant's prenatal methamphetamine use and the fact that the baby tested positive for methamphetamines and amphetamines to support the first-degree child abuse conviction.  No other facts of alleged harm to the baby were introduced, and no facts were introduced of conduct toward the baby after birth.  Thus, the factual basis to support defendant's guilty plea rested solely on defendant's prenatal conduct.  Therefore, the question before us is one of first impression, namely, whether a mother's prenatal drug use can support a conviction for first-degree child abuse where the statute requires the victim to be a "child" and does not specifically include fetuses within the statutory definition of "child."

-3-

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). "The statute's words are the most reliable indicator of the Legislature's intent and should be interpreted based on their ordinary meaning and the context within which they are used in the statute." *People v Lowe*, 484 Mich 718, 721-722; 773 NW2d 1 (2009). If the statutory language is unambiguous, then the statute is applied as written. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). "Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003) (quotation marks and citation omitted). "If the statute defines a term, that definition controls." *People v Wiggins*, 289 Mich App 126, 128; 795 NW2d 232 (2010). "Further, the language must be applied as written, and nothing should be read into a statute that is not within the manifest intent of the Legislature as indicated by the act itself." *People v Lange*, 251 Mich App 247, 253-254; 650 NW2d 691 (2002) (citations omitted). "It is well settled that criminal statutes are to be strictly construed, absent a legislative statement to the contrary." *People v Boscaglia*, 419 Mich 556, 563; 357 NW2d 648 (1984).

MCL 750.136b(2) states that "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Under this statute, a " '[c]hild' means a *person* who is less than 18 years of age and is not emancipated by operation of law as provided in section 4 of 1968 PA 293, MCL 722.4." MCL 750.136b(1)(a) (emphasis added). The definition of "person" that appears in MCL 750.136b serves to define the person committing the abuse rather than the victim. See MCL 750.136b(1)(d) (" 'Person' means a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person."). MCL 750.136b makes no reference to fetuses or to conduct that harms a fetus. Furthermore, neither the definition of "child" nor the definition of "person" found in the statute specifically includes fetuses.

The fact that the Legislature did not include fetuses within either definition in the child-abuse statute is in accord with other statutory definitions of "person," which consistently omit any reference to fetuses. For example, the definition section of the Michigan Penal Code, MCL 750.1 *et seq.*, merely includes the following definition for the term "person": "The words 'person', 'accused', and similar words include, unless a contrary intention appears, public and private corporations, copartnerships, and unincorporated or voluntary associations." MCL 750.10. Similarly, the Michigan Code of Criminal Procedure, MCL 760.1 *et seq.*, states: " 'Person', 'accused', or a similar word means an individual or, unless a contrary intention appears, a public or private corporation, partnership, or unincorporated or voluntary association." MCL 761.1(a).

There does not appear to be any caselaw specifically addressing whether a mother's drug use during pregnancy may form the basis for a first-degree child abuse prosecution on the theory that such drug use harms the fetus. However, this Court previously considered the question of "whether an unborn but admittedly viable fetus is a 'person' as that word is used in the

[negligent homicide] statute[, MCL 750.324[1]]" in *People v Guthrie*, 97 Mich App 226, 229; 293 NW2d 775 (1980). In *Guthrie*, we noted: "The killing of an unborn child was not a homicide at common law for the reason that the fetus was not considered a 'person' or 'a reasonable creature in being' before its birth. It was necessary that the child be 'born alive' and exist independently of its mother's body before it could be considered a 'person'." *Id.* at 229 (citation omitted). Essentially, to be "born alive" means that the fetus has been "totally expelled from the mother and show[n] a clear sign of independent vitality, such as respiration, although respiration was not strictly required." *Id.* at 230 (citation omitted). Alternatively, "[i]n the United States the 'born alive' requirement has come to mean that the fetus be fully brought forth and establish an 'independent circulation' before it can be considered a human being." *Id.*

We held in *Guthrie* that a fetus did not come within the meaning of the word "person" for purposes of the negligent homicide statute, and we affirmed the dismissal of the negligent homicide charge against the defendant. *Id.* at 233, 237-238. In reaching this conclusion, we compared the negligent homicide statute with two statutes that specifically criminalized certain acts of harming unborn fetuses, the assaultive abortion statute, MCL 750.322,[2] and the manslaughter by abortion statute, MCL 750.323,[3] reasoning:

> When the Legislature enacted the negligent homicide statute in 1921 and reenacted it in 1931, the "born alive" rule was a well understood and accepted rule of law. At that time and in subsequent years, the Legislature had the opportunity to include unborn fetuses in the statute, but did not do so. The Legislature has, however, enacted the assaultive abortion and manslaughter abortion statutes cited earlier in this opinion. Both statutes specifically refer to fetal deaths. *The fact that the Legislature would refer to a fetus in two statutes*

---

[1] MCL 750.324 was repealed by 2008 PA 463, § 2, effective October 31, 2010. When *Guthrie* was decided, the statute provided in relevant part, "*Any person who*, by the operation of any vehicle . . . at an immoderate rate of speed or in a careless, reckless or negligent manner, but not willfully or wantonly, *shall cause the death of another*, shall be guilty of a misdemeanor . . . ." *Guthrie*, 97 Mich App at 228-229, citing MCL 750.324 (emphasis added by *Guthrie* Court). The *Guthrie* Court analyzed whether the term "person" included a "fetus" because it noted that the use of the word "another" in the statute "refers back to the word 'person.' " *Id.* at 229.

[2] MCL 750.322 states in relevant part, "The wilful killing of an unborn quick child by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be deemed manslaughter." See also *Guthrie*, 97 Mich App at 231 n 2, quoting MCL 750.322.

[3] MCL 750.323 states in relevant part, "Any person who shall administer to any woman pregnant with a quick child any medicine, drug or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, shall, in case the death of such child or of such mother be thereby produced, be guilty of manslaughter." See also *Guthrie*, 97 Mich App at 231 n 3, quoting MCL 750.323.

*but not in the negligent homicide statute is strongly persuasive that the Legislature did not intend that a viable fetus is a "person" within the meaning of that term in the statute.* [*Id.* at 233 (emphasis added).]

We expressed reservations with the born alive rule but nonetheless recognized that the task of defining criminal conduct belongs to the Legislature:

Although we find that the "born alive" rule is archaic and should be abolished in prosecutions brought under the negligent homicide statute, the abolition of the rule is a matter for action by the Legislature. For this Court to interpret the statute to include unborn viable fetuses as persons would usurp the Legislature's traditional power of defining what acts shall be criminal and would be contrary to the decisions from other jurisdictions cited herein. Respectfully, we urge the Legislature to make the necessary amendments to the statute. [*Id.* at 237-238.]

The Legislature later addressed this concern, although not by expanding the definition of "person" or by abolishing the "born alive" requirement. MCL 750.90e[4] provides:

If a person operates a motor vehicle in a careless or reckless manner, but not willfully or wantonly, that is the proximate cause of an accident involving a pregnant individual and the accident results in a miscarriage or stillbirth by that individual or death to the *embryo or fetus*, the person is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both. [Emphasis added.]

The Legislature has also added further protection for fetuses by criminalizing other acts that result in harm to an embryo or fetus. For example, MCL 750.90a provides:

If a person intentionally commits conduct proscribed under sections 81 to 89 [which involve various types of assault offenses] against a pregnant individual, the person is guilty of a felony punishable by imprisonment for life or any term of years if all of the following apply:

(a) The person intended to cause a miscarriage or stillbirth by that individual or death or great bodily harm to the *embryo or fetus*, or acted in wanton or willful disregard of the likelihood that the natural tendency of the person's conduct is to cause a miscarriage or stillbirth or death or great bodily harm to the *embryo or fetus*.

(b) The person's conduct resulted in a miscarriage or stillbirth by that individual or death to the *embryo or fetus*. [Emphasis added; see also MCL 750.90b (also

_____

[4] Enacted by 1998 PA 238, effective January 1, 1999.

-6-

using the language "embryo or fetus" to criminalize conduct against a pregnant individual that harms the fetus).]

Additionally, in the Infant Protection Act, MCL 750.90g, a "live infant" is defined as a "person." MCL 750.90g(2)[5] states in relevant part:

(2) The legislature finds all of the following:

(a) That the constitution and laws of this nation and this state hold that a *live infant completely expelled from his or her mother's body* is recognized as a *person* with constitutional and legal rights and protection.

(b) That a *live infant partially outside his or her mother* is neither a fetus nor potential life, but *is a person*.

* * *

(6) As used in this section:

(a) "Live infant" means a human fetus *at any point after any part of the fetus is known to exist outside of the mother's body* and has 1 or more of the following:

(i) A detectable heartbeat.

(ii) Evidence of spontaneous movement.

(iii) Evidence of breathing. [Emphasis added.]

In *People v Hardy*, 188 Mich App 305; 469 NW2d 50 (1991), we addressed a factual scenario similar to the instant case, where a mother's criminal charges arose out of her use of

---

[5] In *WomanCare of Southfield, PC v Granholm*, 143 F Supp 2d 849, 855 (ED Mich 2001), the United States District Court for the Eastern District of Michigan held that MCL 750.90g is unconstitutional because the statute "fails to contain an adequate exception to protect the mental and/or physical health of the pregnant woman." However, *WomanCare* concerned the constitutionality of the Infant Protection Act, codified at MCL 750.90g, as a regulation of abortion. See *WomanCare*, 143 F Supp 2d at 852, 854-855. The court did not specifically address the question of whether a fetus is a person. See *id*. While the United States District Court for the Eastern District of Michigan enjoined the State of Michigan "from enforcing any provision of [MCL 750.90g], *WomanCare*, 143 F Supp 2d at 855, the definitions in MCL 750.90g(2)(a) and (b) nevertheless illustrate the Legislature's clear intent that some degree of existence outside the mother is required to meet the statutory definition of a "person." Furthermore, "[l]ower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50; 831 NW2d 887 (2013).

drugs while pregnant. In *Hardy*, the defendant's baby tested positive for cocaine metabolites, and the defendant "admitted to police that she smoked crack—a derivative of crystallized cocaine—less than thirteen hours before giving birth." *Hardy*, 188 Mich App at 307. The defendant was charged with second-degree child abuse,[6] based on "allegations that defendant ingested cocaine while she was pregnant, causing serious physical harm to her minor child," and delivery of less than fifty grams of a mixture containing cocaine,[7] based on the theory that "once ingested the cocaine was transmitted from defendant's system through the umbilical cord during the period after the baby had passed through the birth canal until the umbilical cord was severed after birth." *Id*. The circuit court had granted the defendant's motion to quash regarding second-degree child abuse, "reason[ing] that there was insufficient evidence that defendant's ingestion of cocaine, while pregnant, caused serious physical harm to her child," but the circuit court had denied defendant's motion to quash the charge for delivery of cocaine. *Id*. at 308.

We reversed in *Hardy*, stating, "We are not persuaded that a pregnant woman's use of cocaine, which might result in the postpartum transfer of cocaine metabolites through the umbilical cord to her infant, is the type of conduct that the Legislature intended to be prosecuted under the delivery-of-cocaine statute . . . ." *Id*. at 308, 310. Judge REILLY's concurrence noted that "[t]he term 'deliver' is defined in MCL 333.7105(1) as the actual, constructive, or attempted transfer of a controlled substance from *one person to another*," and addressed the definition of "person." *Id*. at 311-312 (REILLY, J., concurring; citation omitted). Judge REILLY reasoned:

> Nonetheless, we have no historical or scientific basis to determine that the Legislature intended to protect an unborn fetus against the pregnant mother's *use* of narcotics, which is not proscribed by the controlled substances act, when it enacted laws regulating the *possession* or *distribution* of controlled substances. The defendant may properly have been charged with possession of cocaine when she admitted to smoking crack. However, the *use* of controlled substances by a pregnant woman, without more, does not support the additional charge of *delivery to another* while the fetus is still in utero. [*Id*. at 312-313.]

Here, it is clear from the statutory language that a fetus is not a "child" for purposes of the first-degree child abuse statute. See *Borchard-Ruhland*, 460 Mich at 284. Neither the definition of "child" in the child abuse statute, nor the general definition of "person" in the Michigan Penal Code make any reference to fetuses. MCL 750.136b(1)(a); MCL 750.10. And the Legislature has consistently refrained from expanding the definition of person to include fetuses. See, e.g., *Guthrie*, 97 Mich App at 233; MCL 750.136b(1)(a); MCL 750.136(1)(d); MCL 750.10; MCL 761.1(a). Rather, when the Legislature has created protection for fetuses, it has done so by clearly and specifically including embryo, fetus, unborn quick child, or other similar term in the statutory language instead of by including fetuses within the statutory

---

[6] MCL 750.136b(3).

[7] MCL 333.7401(2)(a)(iv).

definition of a "person."  See, e.g., MCL 750.90a; MCL 750.90b; MCL 750.90e; MCL 750.322; MCL 750.323.

For example, when addressing our concern expressed in *Guthrie* about the lack of protection in the negligent homicide statute for harmed fetuses, the Legislature responded, not by modifying the definition of person, but by creating a statute specifically protecting fetuses.  See MCL 750.90e.  "When the Legislature acts in a certain subject area, it is presumed that the Legislature is aware of existing judicial interpretations of words and phrases within that subject area." *Lange*, 251 Mich App at 255.  The course of action chosen by the Legislature with respect to MCL 750.90e suggests that it did not disagree with our *Guthrie* holding that the statutory definition of "person" did not include fetuses, even though the Legislature was nonetheless willing to criminalize the conduct at issue when it resulted in harm to a fetus.  See *Lange*, 251 Mich App at 255 ("The Legislature's silence when using terms previously interpreted by the courts suggests agreement with the courts' construction.").  Additionally, in the Infant Protection Act, the Legislature made clear that the definition of "person" includes "a live infant partially outside his or her mother" but that a live infant partially outside the mother "is neither a fetus nor a potential life."  MCL 750.90g(2)(b).

As we reasoned in *Guthrie*, the Legislature's specific use of the terms fetus, embryo, or unborn quick child in some statutes without including such terminology in the definition of "child" in the child abuse statute "is strongly persuasive that the Legislature did not intend that a viable fetus is a ["child"] within the meaning of that term in the statute."  See *Guthrie*, 97 Mich App at 233.  Moreover, just as we determined in *Hardy* that the Legislature did not intend for the crime of delivering cocaine to incorporate a mother's prenatal drug use, here it does not appear, based on the statutory definition of "child" and its lack of a reference to fetuses, that the Legislature intended for the first-degree child abuse statute to be used as the vehicle for prosecuting a mother who abuses drugs while pregnant.  See *Hardy*, 188 Mich App at 308, 310; *id*. at 311-313 (REILLY, J., concurring).  To interpret the definition of "child" in MCL 750.136b(1)(a) to extend to fetuses would be to wrongly read a term into the statute that "is not within the manifest intent of the Legislature as indicated by the act itself."  See *Lange*, 251 Mich App at 253-254.

Therefore, because a fetus is not a "child" for purposes of the first-degree child abuse statute, defendant cannot be guilty of first-degree child abuse based solely on the fact that she used methamphetamine while she was pregnant, and the trial court erred by accepting her guilty plea.  See MCR 6.302(D)(1); *People v Adkins*, 272 Mich App 37, 38; 724 NW2d 710 (2006)(indicating that the factual basis for a plea is inadequate if the finder of fact cannot properly convict the defendant on the facts elicited at the plea hearing).

Thus, defendant has established plain error affecting her substantial rights.  Defendant has shown error because the statute of conviction did not apply to her conduct.  See *Carines*, 460 Mich at 763.  This error was plain because, as discussed above, the statutory language of MCL 750.136b(2) makes clear that the statute applies to acts that harm a "child" but not to acts that harm a fetus; the statute does not make a mother's prenatal drug use a criminal offense.  See *Carines*, 460 Mich at 763.  The error prejudiced defendant because she would not have been convicted of first-degree child abuse but for the statute's erroneous application to her conduct.  See *id*.  Finally, relief is justified in this case because the error resulted in the conviction of an

individual who was "actually innocent" of the conduct proscribed by MCL 750.136b(2) and allowing such a conviction to stand would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." See *Carines*, 460 Mich at 763 (quotation marks and citation omitted).

Defendant also argues that she received ineffective assistance of counsel based on defense counsel's failure to object to the applicability of MCL 750.136b(2). However, this issue is now moot. "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004). "Normally, the remedy for ineffective assistance of counsel is a new trial." *People v Gridiron*, 190 Mich App 366, 370; 475 NW2d 879, amended 439 Mich 880 (1991). Here, having determined that defendant's conviction should be vacated because the statute of conviction did not apply to the conduct on which the conviction was based, there is no further remedy that is available based on a claim of ineffective assistance of counsel. Thus, defendant's ineffective assistance of counsel claim is moot and need not be addressed. See *Cathey*, 261 Mich App at 510; *People v Sours*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 326291, issued May 10, 2016); slip op at 3 ("This Court generally does not decide moot issues.").

We hold that a fetus is not a "child" for purposes of MCL 750.136b. Therefore, defendant's prenatal methamphetamine use, on which her conviction was based, did not support a conviction of first-degree child abuse and her conviction and sentence must be vacated.

We vacate defendant's conviction and sentence. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

-10-