# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CHARLES WILLIAM CONFERE,

       Defendant-Appellant.

UNPUBLISHED
August 10, 2017

No. 331619
Macomb Circuit Court
LC No. 2015-001318-FH

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Charles Confere, appeals as of right his jury trial conviction of third-degree criminal sexual conduct, MCL 750.520d(1)(c) (sexual penetration knowing or having reason to know that the victim was physically helpless). We reverse and remand for a new trial because the prosecutor committed misconduct.[1]

## I. BASIC FACTS

The complainant testified that on August 22, 2014, she invited Confere, her neighbor, to her apartment to watch a movie. During the movie, she consumed two mixed drinks and took several medications, which apparently made her sleepy or groggy. The complainant testified that at one point, Confere started rubbing her feet. He then moved his hand up her thigh, so she pushed his hand away and told him to leave. Confere did not leave. Instead, he moved his hand from her thigh to her breasts. The complainant again moved his hand and told him to leave. Thereafter, the complainant fell asleep. She testified that when she woke up, Confere had his fingers in her vagina. The complainant stood up and told Confere to leave.

---

[1] This Court recently noted in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that the phrase "prosecutorial misconduct" has become a term of art "often used to describe any error committed by the prosecution, even though claims of inadvertent error by the prosecution are 'better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases arising to the level of 'prosecutorial misconduct.' " Given the prosecutor's actions in this case, we believe that the phrase prosecutorial misconduct, not prosecutorial error, is appropriate.

In addition to the complainant's testimony, the prosecutor also introduced a recording of a one-party consent call. In the recording, the complainant asked Confere "Why did you do that?" In response, Confere stated that he did not put his fingers in the complainant's vagina. The complainant testified that she never told Confere that he had his fingers in her vagina. Confere agreed that the complainant had not told him about the allegations; however, he asserted that he had heard what she was claiming from another neighbor, and the police detective confirmed that the complainant had discussed the incident with a female neighbor. The detective stated that the neighbor told him that the complainant told her that she had been sexually assaulted, but that the complainant did not provide any specific details of the assault to her neighbor.

Finally, under MRE 404(b), the prosecutor introduced testimony about three prior sexual assaults involving Confere. The first assault occurred about 30 years earlier. The other-acts witness, RU, testified that when she was 14 years old, Confere entered her parents' apartment to do some repair work, and he touched her breasts and between her legs. RU stated that at the time she was in a wheelchair because she had cerebral palsy. She also testified that Confere told her not to tell anyone, but that she told her mother, the police became involved, and she went to court because of the incident.

The second other-acts incident occurred in 2004. The complainant, PR, testified that Confere was her neighbor and would come into her apartment to fix things for her. She stated that she went to Confere's apartment because he was supposed to drive her to a church for free food. She testified that Confere sat on the couch beside her and started touching her breasts. Although the incident was reported, nothing happened. Subsequently, in 2010, PR testified that Confere again touched her breasts, this time after entering her apartment and pushing her against the wall with his body. She explained that while touching her breasts, Confere stated that he would call her left breast "strawberry" and her right breast "chocolate." She testified that during the 2004 incident she used a cane and during the 2010 incident she was using a walker. Confere pleaded guilty to charges arising from the 2004 and 2010 assaults. He admitted to touching PR's breasts on one occasion in 2004 and on two occasions in 2010.

The prosecutor argued that the prior sexual assaults showed a common plan or scheme whereby Confere would sexually prey on vulnerable girls or women. She also used the other-acts evidence to argue during her closing arguments that the assault on RU showed what Confere was "capable of" and that he "wants [the jury] to believe he's a proper gentleman" when he was actually a "sick rapist, who's sadistic, and has been getting away with this for years."

Confere, who testified on his own behalf, stated that he never touched the complainant's breasts or her vagina, and he asserted that he left when she told him to leave.

## II. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Confere argues that the prosecutor committed misconduct, thereby denying him a fair trial. Because there was no objection to the alleged instances of prosecutorial misconduct, this issue is unpreserved and our review is "for plain error affecting substantial rights." *People v*

*Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "On plain-error review, the burden is on the defendant to establish (1) error; (2) that was plain, meaning clear or obvious; and (3) that caused prejudice, meaning that the error affected the outcome of the lower court proceedings." *People v Jones*, 317 Mich App 416, 420; 894 NW2d 723 (2016) (citation and quotation marks omitted). This Court will only reverse if a defendant establishes plain error and the error resulted in the conviction of an innocent defendant or it "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted). Additionally, "this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (citation and quotation marks omitted).

## B. ANALYSIS

Confere asserts that the prosecutor committed misconduct when she made improper character references during her cross-examination of Confere, during her closing argument, and during her rebuttal argument. We examine the prosecutor's remarks in context to determine whether Confere was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007).

During cross-examination, the prosecutor repeatedly questioned whether Confere was a "perfect gentleman" when he sexually assaulted RU, PR, and the complainant:

> *Q*. So this isn't the first time you spoke to law enforcement regarding a sexual assault, right?
>
> *A*. Right.
>
> *Q*. And so, when you were in there, you know that there could potentially be legal consequences?
>
> *A*. Yes, ma'am.
>
> *Q*. But, you're saying you didn't tell the officer that [your neighbor who allegedly told you about the sexual assault allegations] told you that, even though he specifically asked you?
>
> *A*. Well, when I give my word, I try to keep it.
>
> *Q*. *Because you're a perfect gentlemen.*
>
> *A*. No, ma'am, I am not.
>
> *Q*. *But you were a perfect gentlemen with [the complainant] that night— with [the complainant] that night.*
>
> *A*. Yes, ma'am.

*Q. And were you a perfect gentleman when you were with [RU] in her apartment 30 years ago?*

*A.* I really can't remember what happened 30 years ago. I'm getting up in age and my memory has not been the same.

*Q.* Oh, because this is all about you, right?[2]

*A.* No, it isn't.

*Q.* Okay. All right. Because you heard her come in here and testify—

*A.* Yes, I did.

*Q.* –right? Thirty years later, you heard her say June 6, 1986. She remembers the exact date that you did that to her.

*A.* I guess she does.

*Q.* See, because that stuck with her. Might have not stuck with you, but it's something that's affected her her whole life.

\* \* \*

*Q. Were you a perfect gentleman with [PR]?*

*A.* Well, the eleven years I lived there, I tried to be.

*Q.* Okay. *And so, are you a perfect gentleman when you touch her breasts without permission?*

*A.* No. [Emphasis added.]

We conclude that the prosecutor's questioning was irrelevant to establish that Confere employed a common plan or scheme during the sexual assaults. Whether someone is or is not a "gentleman" reflects primarily on their character given that the common understanding of the term is that a gentleman is a man "whose conduct conforms to a high standard of propriety or correct behavior." *Merriam-Webster's Collegiate Dictionary* (11th ed). Accordingly, it is clear that the prosecutor's questioning on this point was used to besmirch Confere's character by implying he lacked the characteristics of a "perfect gentleman" even after he admitted that he was not one. As such, it was an improper attack on Confere's character. See *People v McGhee*, 268 Mich App 600, 635-636; 709 NW2d 595 (2005) (stating that a prosecutor may not comment on a defendant's character when his character is not in issue).

---

[2] These sorts of gratuitous insults are inappropriate and unbecoming in any trial.

Next, during closing argument, the prosecutor again made an improper comment on Confere's character. She argued:

> RU came in and, from 30 years ago, remembers the defendant, and she identified him. Thirty years ago. This defendant[] sexually assaulted a minor handicapped child. He lived in the same apartment complex as her, he knew that she lived there, and when he got to go in her apartment that day for maintenance work and he came back one, two, three times she said, he knew that she was alone and that her mom and dad and sister weren't there. Lying on the floor, helpless. *That is what this defendant is capable of.* He fondles and gropes her breasts and touches her vagina, and then said don't tell anybody this happened, will you be my secret girlfriend? [Emphasis added.]

Although the majority of this argument is proper given that it focuses on the non-propensity purpose of the other-acts evidence, the comment "That is what this defendant is capable of" suggests that Confere has a propensity for sexually assaulting helpless victims, but it does not suggest that he employs a common plan or scheme when doing so. As such, the argument contained an impermissible character inference. See *People v Quinn*, 194 Mich App 250, 253; 486 NW2d 139 (1992) (stating that a prosecutor can deprive a defendant of a fair trial by using MRE 404(b) evidence as substantive evidence of the defendant's guilt).

Finally, and most egregiously, during rebuttal argument, the prosecutor again used the other-acts evidence to argue that Confere had a propensity to sexually assault women. The prosecutor argued "This defendant wants you to believe that's he's a proper gentleman. But, in fact, he's a sick rapist, who's sadistic, and has been getting away with this for years." This argument was improper because it used the other-acts evidence to draw a propensity inference, i.e., to assert that Confere was a wicked man rather than to argue that the other-acts evidence showed a common plan or scheme or that it was not an accidental touching. Moreover, the evidence established that the police had been contacted and court proceedings had occurred in the case with RU, and it showed that Confere pleaded guilty in the case with PR. Therefore, the prosecutor's comment that Confere had been "getting away with [sexual assaults] for years" was unsupported by the evidence, so it was improper. See *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994) (stating that a prosecutor may not make a statement of fact to the jury that is unsupported by the evidence). See also *Quinn*, 194 Mich App at 253.[3]

Having concluded that the prosecutor plainly committed misconduct, we must now determine whether that error affected Confere's substantial rights. *Jones*, 317 Mich App 420. This case was essentially a credibility contest between Confere and the complainant. The

---

[3] We note that the comment that Confere wanted the jury to believe that he was a proper gentleman was also inaccurate. Based on the prosecutor's cross examination of Confere, it was plain that although he strived to be a "perfect gentleman," he did not consider himself to be one. We find it inappropriate for a prosecutor to suggest a defense to a defendant, have him deny that defense, and then use the suggested defense as if it were the defendant's actual defense during closing argument.

prosecutor's relentless use of the other-acts evidence to draw improper character inferences tainted the entirety of the proceedings. The pervasiveness of the improper character attacks demonstrates that the prosecutor did not make an inadvertent and isolated remark. Rather, it appears that the prosecutor's true theory of the case was that Confere was a sick rapist and a sadist who had a propensity to sexually assault women. Furthermore, the most egregious of the character attacks—the rebuttal argument that Confere was a sick rapist and a sadist who had been getting away with sexual assaults for years—came at the end of the closing arguments when Confere could not respond. As a result, the last argument the jury heard was a compelling capstone to the prosecutor's theory that Confere had a propensity to sexually assault helpless or vulnerable females. Although the trial court provided a limiting instruction on the proper use of the other-acts evidence, in some instances misconduct may so overstep its bounds that no instruction can erase the prejudicial effect of the misconduct. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) (recognizing that in some instances the prejudicial effect of prosecutorial misconduct can be "so severe" that it cannot be cured by a jury instruction). See also, e.g., *People v Stevens*, 498 Mich 162, 190; 869 NW2d 233 (2015) (recognizing that jury instructions do not always alleviate the prejudice caused by improper judicial conduct). Here, given the nature of the case, i.e., a credibility contest between two individuals; the pervasiveness of the improper character inferences; and the limited probative value of the other-acts evidence, the prosecutor's misconduct affected Confere's substantial rights. Moreover, given the widespread and seemingly intentional nature of the misconduct, we conclude that independent of Confere's guilt or innocence, the error seriously affected the fairness and integrity of the judicial proceedings. See *Jones*, 317 Mich App 420. Reversal is required.[4]

Reversed and remanded for a new trial. We do no retain jurisdiction.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[4] Confere also argues that the trial court abused its discretion when it admitted other-acts evidence of his prior sexual assaults. Given our resolution of the prosecutorial misconduct issue, we decline to address this issue. Instead, on remand, the trial court shall reconsider whether the evidence of Confere's prior sexual assaults is admissible under MRE 404(b) in light of our Supreme Court's recent decision *People v Denson*, ___ Mich ___; ___ NW2d ___ (2017) (Docket No. 152916).