COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RODNEY JAMAR McKEE,

        Defendant-Appellant.

UNPUBLISHED
February 27, 2018

No.  333720
Jackson Circuit Court
LC No.  15-002788-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CORTEZ ANTONIO BUTLER,

        Defendant-Appellant.

No.  335767
Jackson Circuit Court
LC No.  15-002789-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLIFFORD DURELL McKEE,

        Defendant-Appellant.

No.  336598
Jackson Circuit Court
LC No.  15-002787-FC

---

Before:  CAVANAGH, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

      Defendants Rodney Jamar McKee (Rodney), Cortez Antonio Butler, and Clifford Durell McKee (Clifford), were tried jointly, before a single jury. The jury convicted each defendant of first-degree murder, MCL 750.316(1), conspiracy to commit first-degree murder, MCL

-1-

750.157a, and first-degree home invasion, MCL 750.110a(2). The jury also convicted Rodney and Clifford of solicitation of murder, MCL 750.157b(2). The trial court sentenced Rodney to life without parole for the first-degree murder and conspiracy convictions, life imprisonment for the solicitation of murder conviction, and 12 to 20 years' imprisonment for the home invasion conviction. The court sentenced Butler as a fourth-offense habitual offender, MCL 769.12, to life without parole for the first-degree murder and conspiracy convictions, and 50 to 75 years' imprisonment for the home invasion conviction. Lastly, the court sentenced Clifford as a fourth-offense habitual offender to life without parole for the first-degree murder and conspiracy convictions, life imprisonment for the solicitation of murder conviction, and 30 to 60 years' imprisonment for the home invasion conviction. Rodney appeals as of right in Docket No. 333720, Butler appeals as of right in Docket No. 335767, and Clifford appeals as of right in Docket No. 336598. For the reasons explained in this opinion, we affirm in each appeal.

Defendants' convictions arise from the stabbing death of Frances Craig, who was killed inside her home in Jackson, Michigan. The victim's body was discovered in her bedroom on the morning of August 10, 2014. The victim shared the home with her two young daughters, her fiancé Eric Wolfe, and Wolfe's young daughter. Before the victim and Wolfe moved to the home in June 2014, they had been living in an apartment at the Oaks Apartment Complex in Jackson. In March 2014, Wolfe's friend, Ryan Marshall, moved into the apartment with Eric and the victim after a fire destroyed the apartment that Ryan and his mother, Donna Marshall, were living in. Donna sold drugs for Rodney, who she knew as "Neffue," but she wanted to stop selling. On the day of the fire, Ryan saw Rodney sneaking around outside the house, and Rodney was charged with first-degree arson in connection with the fire. Ryan intended to testify against Rodney in the arson case. When the victim and Wolfe moved to their new residence, Ryan did not move with them.

The evidence presented at trial showed that the victim suffered 20 deep stab wounds, including wounds to her neck. Her wrists were confined with zip ties and she was gagged with a scarf that had been wrapped around her neck. Wolfe was initially considered the prime suspect in the homicide. However, Wolfe claimed that he was at work at the time the victim was killed and a review of the cameras at his place of employment provided no indication that he had left work during that time frame.

DNA testing revealed that the zip ties from the victim's hands contained DNA from a male donor. In November 2014, this DNA was matched to Butler's DNA in the Combined DNA Index System (CODIS). A forensic analysis of Butler's cell phone records revealed that Butler's phone was in the Jackson area on August 6, 8 and 10, and that the Jackson area was outside that phone's "pattern of life." On those dates, Butler's phone communicated frequently with several phone numbers, including a number that was registered under the name "Dorito Johnson," a street name for Clifford. On December 11, 2014, real-time GPS tracking located Clifford's phone at a mall in Jackson, where Clifford was arrested and police seized three cell phones from him. Clifford admitted knowing Butler and phone mapping data showed that Butler's phone and Clifford's phone had traveled together on I-94.

On December 11, 2014, detectives interviewed Butler at the Detroit Detention Center. The interview was recorded and Butler denied knowledge of the Jackson homicide. Detectives interviewed Butler again on December 16 in Detroit, when they went to obtain a buccal swab to

confirm the DNA match. After being assured that his interview was not being recorded, Butler confessed to the detectives that "Dorito Johnson" had contacted him to "perform a hit" on a person who was going to testify against Rodney[1] in an upcoming criminal case. Butler told detectives that he had traveled with Dorito Johnson from Detroit to Jackson and that Rodney, who was driving a white SUV, paid $5,000 of the agreed $10,000 fee up front. Butler said that he entered the victim's residence and was unable to locate the intended target in the home, so he went into the master bedroom where he woke up the victim to interrogate her about the individual's location. He explained that he ultimately killed the victim because he believed she saw his face. Butler told detectives that he "damn near cut the Bitch's head off." Another witness, Dale Morgan, testified that he and Butler had an argument in December 2014 about a cell phone and that Butler told him to "shut the f**k up, I know what I'm doing," "I just chopped a Bitch up in Jackson." At trial, Butler denied killing the victim and denied making statements to the police and to Morgan.

## I. *BATSON* CHALLENGES

Rodney argues that the prosecutor improperly used peremptory challenges to excuse prospective African-American jurors. Butler similarly argues that the trial court erred in denying his motion for a mistrial due to the prosecutor's use of peremptory challenges to excuse African-American jurors. These arguments implicate *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), in which the United States Supreme Court held that the Equal Protection Clause prohibits the use of peremptory challenges to exclude members of a jury venire because of their race.

Preliminarily, we note that neither Rodney nor Butler timely raised a *Batson* challenge. A *Batson* challenge is timely if it is made before the jury is sworn. *People v Knight*, 473 Mich 324, 348; 701 NW2d 715 (2005). Rodney and Butler did not make their *Batson* challenges until after the jury was sworn. Therefore, their challenges were untimely and, as such, could be considered waived. *Id*. at 346 n 14, 348. Waiver extinguishes any error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Even if we consider this issue under the plain-error standard applicable to unpreserved claims, *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), Rodney and Butler would not be entitled to appellate relief.

Assuming that Rodney and Butler satisfied the first step of *Batson* by making a prima facie case of purposeful discrimination, *Batson*, 476 US at 93-94, the prosecutor would have had the burden of providing race-neutral explanations for the peremptory challenges. *Id*. at 97. At this step, "the issue is whether the . . . explanation is facially valid as a matter of law. . . . 'A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror . . . . Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Knight*, 473 Mich at 337 (citation omitted). After a race-neutral reason is proffered, "the trial court must then determine whether

---

[1] Butler used a street name for Rodney and described him as a "very, very large man, 6'6", 6'7" and about 400 pounds."

the race-neutral explanation is a pretext" and whether the defendant "has proved purposeful discrimination." *Id*. at 337-338.

Despite the lack of a timely objection, when the issue was raised, the prosecutor provided her reasons for using peremptory challenges to dismiss the jurors in question.[2] Those reasons were race-neutral and the trial court was satisfied that the reasons were valid. Citing *People v Tennille*, 315 Mich App 51; 888 NW2d 278 (2016), Rodney argues that the trial court erred by failing to make findings of fact and rulings addressing the nature of the prosecutor's reasons. However, unlike in *Tennille*, where the trial court merely stated that the prosecutor had articulated a valid, race-neutral reason for the strikes, *id*. at 62, the trial court in this case assessed the prosecutor's proffered reasons and made findings of fact regarding the prosecutor's justification for the strikes under the circumstances. Neither Rodney nor Butler has provided any basis for concluding that the prosecutor's race-neutral reasons were a pretext for discrimination. Accordingly, they have failed to demonstrate plain error in the trial court's denial of the *Batson* challenges or denial of a mistrial with respect to this issue.

## II. MOTION TO SEVER TRIAL

Rodney argues that the trial court erred by denying his motion to sever his trial from that of the codefendants. We review a trial court's decision regarding severance for an abuse of discretion. *People v Bosca*, 310 Mich App 1, 43; 871 NW2d 307 (2015), appeal held in abeyance 872 NW2d 492 (2015).

MCR 6.121 governs the joinder and severance of charges for multiple defendants. In general, a defendant does not have a right to a separate trial. *People v Hurst*, 396 Mich 1, 6; 238 NW2d 6 (1976). A strong policy favors joint trials in the interest of justice, judicial economy, and administration. *People v Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). Severance is mandated under MCR 6.121(C)[3] only when a defendant demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. *People v Hana*, 447 Mich 325, 345; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994). "The failure to make this showing in the trial court, absent any significant

---

[2] Specifically, one juror was dismissed because he admitted that, when he was a juror in a previous criminal case, he believed that the defendant was guilty but agreed to just "go along with everybody else" to reach "the wrong verdict" and find the defendant not guilty "because of what was going on in the jury room." The second juror acknowledged that she had a previous bad experience with a lawyer and would be "more concerned" about, and "more critical" of, the attorneys involved in this case. And, the final juror, who stated that she had previously been the victim of a crime when she was shot in the leg during a home invasion, demonstrated a notable lack of ability to pay attention to details when she could not recall who committed the crime, what charges were brought, if the matter proceeded to trial, whether anyone was convicted, etc.

[3] MCR 6.121(C) states that "[o]n a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of defendant."

indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision." *Id*. at 346-347. Neither the existence of inconsistent defenses nor incidental spillover prejudice is sufficient to require severance; "rather, the defenses must be 'mutually exclusive' or 'irreconcilable.'" *Id*. at 349 (citations omitted).

Rodney argued below that severance was necessary under MCR 6.121(C) because Butler's confession implicated Rodney in the crimes. Rodney submitted with his motion to sever an affidavit asserting that he had pleaded not guilty to all charges and he denied Butler's statements as untrue. In other words, the prejudice that Rodney alleged would occur was premised on Butler incriminating Rodney in crimes in which Rodney denied participating. Rodney maintained that there was "no way for one jury . . . to believe both men." However, Butler testified at trial. He denied having confessed to detectives and he did not attempt to incriminate Rodney. There was thus nothing inconsistent, and certainly nothing mutually exclusive or irreconcilable, between Butler's defense and Rodney's defense. See *Hana*, 447 Mich at 349. Consequently, the purported prejudice on which Rodney relied to justify severance did not occur.

Nevertheless, Rodney contends that he can make a showing of prejudice based on evidence that was introduced against Butler at trial. In this regard, Rodney argues that the requisite prejudice occurred at trial when the prosecutor cross-examined Butler about his involvement in unrelated homicides.[4] Although these other acts did not pertain to Rodney and thus would not have been introduced at a separate trial, we reject Rodney's argument that he is

---

[4] In making this argument, Rodney also contends that the prosecutor's cross-examination violated a pretrial ruling that evidence of Butler's involvement in other, unrelated homicides was inadmissible. The matter was raised again during trial, however, when questions arose regarding whether the prosecutor would be permitted to cross-examine Butler about statements he made relative to other homicides if he chose to testify and accused the detectives or Morgan of lying in their testimony concerning Butler's alleged statements. The trial court ruled that the prosecutor would be permitted to cross-examine Butler about other homicides if Butler chose to testify and he opened the door to such questioning. During direct examination, Butler denied the statements attributed to him by the detectives and Morgan, and he asserted that he told them that "they won't be able to hook this one on me." The prosecutor, in accordance with the trial court's ruling, then cross-examined Butler about his involvement in other homicides. In particular, the prosecutor asked what Butler meant by "hook this one on me," and Butler asserted that Morgan falsely implicated him in another murder. Despite this assertion that Morgan falsely implicated him, Butler acknowledged that he pleaded guilty to murder in the other case. Thus, the prosecutor's cross-examination of Butler with respect to other homicides did not violate the trial court's ruling, and we find no error in this questioning given that Butler opened the door by asserting that the police and Morgan had previously tried to "hook" him. Cf. *People v Mullins*, __ Mich App __, __; __ NW2d __ (2017) (Docket No. 334098) (finding no error when a defendant opens the door to otherwise improper questioning), p 7.

entitled to reversal based on this questioning.[5]  The evidence relating to Butler's involvement in other homicides did not implicate Rodney in those other crimes, and the evidence of other homicides was only used against Butler.  Cf. *People v Moore*, 78 Mich App 294, 299; 259 NW2d 351 (1977).  Further, the trial court determined that any potential prejudice resulting from admission of the evidence could be alleviated by a limiting instruction.  The trial court instructed the jury, in relevant part, as follows:

> You must judge each defendant on the evidence presented against that particular defendant, thus, for example, you – should you find that the evidence shows one defendant to be guilty you should not thereby automatically find the others guilty as well.  Judge each defendant based on the evidence against him.  Just because some evidence may tend to implicate one defendant does not automatically mean that it implicates the other defendants as well.

> Certain information has been presented to you showing that Cortez Butler may have been involved in certain crimes in the past.  Because this evidence has nothing to do with either Rodney or Clifford McKee you are not to consider it against either of them.

A limiting instruction will often suffice "to enable the jury to compartmentalize evidence and consider it only for its proper purpose."  *People v Mardlin*, 487 Mich 609, 629; 790 NW2d 607 (2010) (quotation marks and citation omitted).  Jurors are presumed to follow their instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).  Rodney has not provided any basis for overcoming the presumption that the jurors followed the court's instructions, and he has not shown the prejudice necessary to reverse the trial court's joinder decision.  See *Hana*, 447 Mich at 346-347.

Rodney also argues that the requisite prejudice occurred during trial when the prosecutor "introduced inadmissible evidence" in front of the jury when responding to an objection by Butler's counsel.[6]  Rodney has provided no basis for concluding that he was prejudiced by the prosecutor's brief argument regarding the relevance of the evidence.

In sum, the trial court did not abuse its discretion by denying Rodney's motion for severance, and Rodney has failed to show that the requisite prejudice occurred at trial.

### III.  PROSECUTOR'S CONDUCT

Rodney argues that the prosecutor's conduct denied him a fair trial.  Preserved claims of prosecutorial misconduct are evaluated on a case-by-case basis to determine whether the prosecutor's conduct denied the defendant a fair and impartial trial.  *People v Rice (On Remand)*,

---

[5] Clifford also raises this issue in his argument that the trial court erred in denying his motion for a mistrial based on the prosecutor's cross-examination of Butler.  That argument is addressed in section VIII, *infra*.

[6] The evidence at issue is further discussed in section III, *infra*.

235 Mich App 429, 434-435; 597 NW2d 843 (1999). In this case, however, Rodney failed to preserve most of his claims with an appropriate objection at trial. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *Id*. "On plain-error review, the burden is on the defendant to establish (1) error; (2) that was plain, meaning clear or obvious; and (3) that the plain error caused prejudice, meaning that the error affected the outcome of the lower court proceedings." *People v Jones*, 317 Mich App 416, 420; 894 NW2d 723 (2016) (citation and quotation marks omitted). This Court will only reverse if a defendant establishes plain error and the error resulted in the conviction of an innocent defendant or it "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted). "[T]his Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (citation and quotation marks omitted).

Rodney first argues that the prosecutor elicited perjured testimony when Detective Andrew Sullivan testified that Butler confessed to his involvement in a "triple" homicide in Detroit. The court was later informed that the unrelated offense involved a "double" homicide and injury to a third individual, and that a different person had pleaded guilty to that offense.

A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Smith*, 498 Mich at 476. The entire focus of this Court's analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. *Aceval*, 282 Mich App at 390.

Assuming that Detective Sullivan's testimony regarding the number of homicide victims was false, Rodney has not shown how the fact that the other case involved a double homicide, rather than a triple homicide, had any effect on Rodney's trial. The trial court corrected the false testimony by complying with Butler's attorney's request that the jury be informed that there were only two victims and that someone else had pleaded guilty. Rodney has not shown plain error.

Second, Rodney argues that the prosecutor improperly argued facts not in evidence when she characterized the victim as a hero during closing arguments, and when she referred to Butler as a "hitman" when offering a rebuttal witness for Butler's testimony. We disagree. A prosecutor may argue all the facts in evidence and reasonable inferences as they relate to the prosecutor's theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Detective Joseph Merritt testified that Butler stated that he had been hired to perform a hit or a homicide on an individual, and this evidence supports the characterization of Butler as a "hitman." Butler also told Detective Merritt that he woke up the victim and interrogated her to determine the location of the other individual, and that he killed her because she kept moving in a manner that allowed her to see his face. The prosecutor argued as follows:

> And the only reason to stay in that room in that house any longer at that
> point is to try to get information about Ryan Marshall. It's the only reason. He

-7-

has already been all the way through that house by that time and knows Ryan isn't there. He's in that room with Frannie and clearly knows she's not Ryan. He could have left. She is bound, she is gagged, she is at least stunned or dazed or knocked out, probably has barely had a chance to look at him at that point, could have gotten away. Had her phone, she couldn't even have easily or readily called 911 or anybody else for help. He could have left.

The only reason to stay is to get information about Ryan Marshall, and clearly, she wouldn't give him what he wanted. Clearly, she wouldn't tell him, clearly she struggled, and as we now know from his statement, she kept trying to look at him so he had to take her out.

I told you in opening that Frannie died as collateral damage, but Frannie, more importantly, died a hero. Wouldn't give him what he wanted and fought as best she could.

The prosecutor's characterization of the victim as a hero was a reasonable inference based on the evidence and the conduct that resulted in the victim's death. The prosecutor was not required to state her argument in the blandest possible terms. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Third, Rodney argues that the prosecutor improperly told the jury during her rebuttal argument that *Miranda*[7] is a legal issue and that Butler's statement would not have been admissible if it was obtained in violation of Butler's *Miranda* rights. The prosecutor's argument was responsive to Butler's counsel's suggestion during his closing argument that Butler's statement was obtained in violation of *Miranda*. See *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2011) (a prosecutor's otherwise improper remark may not require reversal when given in response to defense counsel's argument). Contrary to what Rodney asserts, the prosecutor's remark did not vouch for the veracity of the confession or the credibility of the detective's testimony. Indeed, the prosecutor told the jury that they could consider whether the statement was voluntary, and the prosecutor did not attempt to prevent the jury from considering the credibility of the confession or whether such a confession was made. See *People v Gilbert*, 55 Mich App 168, 173; 222 NW2d 305 (1974); see also *People v Pierson*, __ Mich App __, __; __ NW2d __ (2017) (Docket No. 332500), p 2. Moreover, the trial court instructed the jury that the lawyers' arguments were not evidence, and the trial court instructed the jury regarding their ability to weigh and consider Butler's statement. In these circumstances, reference to there being nothing legally amiss with regard to *Miranda* does not require reversal. See *People v Kincaid*, 136 Mich App 209, 215-216; 356 NW2d 4 (1984).

Fourth, Rodney asserts that the prosecutor misled the jury by presenting "unadmitted evidence." It appears that Rodney is referring to a PowerPoint that was made by the prosecutor that outlined various text messages, including a communication between Rodney and an unidentified third party, referred to as "D." Butler's counsel objected to testimony regarding the

---

[7] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

phone call, challenging the relevance "of a conversation with a third party who's yet to be identified as having anything [to do] with this case." The court asked the prosecutor why the communication was relevant, and, in front of the jury, the prosecutor replied, "Because this whole thing starts with Rodney trying to stay out of jail from the arson" "[s]o D's telling him how to" and Rodney replied, "He's got it under control." Rodney's counsel objected on the ground that the prosecutor's reasoning "called for speculation." After additional discussion outside the presence of the jury, the trial court concluded that the communication was not relevant and was inadmissible. Rodney now argues it was improper for the jury to see the PowerPoint prepared by the prosecutor and for the prosecutor to discuss the text message in front of the jury.[8] However, Rodney has not provided any basis for concluding that he was prejudiced as a result of the jury viewing the PowerPoint and the prosecutor's brief argument regarding the relevance of the evidence. Thus, he has not shown plain error and he is not entitled to relief on appeal.

Fifth, Rodney argues that the prosecutor had a duty to correct Morgan's testimony, which Rodney maintains was false. However, Rodney has offered no support, other than his own belief, for his assertion that Morgan's testimony was false or that the prosecutor knew the testimony to be false. Cf. *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). Further, he has presented no argument explaining how Morgan's statement pertaining to Butler was material in Rodney's case. See *Aceval*, 282 Mich App at 389. Consequently, Rodney has failed to show that the prosecutor knowingly used perjured testimony. See *id*. at 389-390.

Lastly, Rodney and Butler both argue that the prosecutor knowingly violated the trial court's evidentiary ruling when she cross-examined Butler with respect to other homicides in which he was involved. As discussed in section II, *supra*, the trial court ruled that the prosecutor could cross-examine Butler about other homicides if Butler opened the door on direct examination. Because Butler opened the door to the challenged testimony, the prosecutor did not elicit "prohibited testimony" by cross-examining Butler regarding other homicides. See *People v Mullins*, __ Mich App __, __; __ NW2d __ (2017) (Docket No. 334098). The premise of this argument is factually flawed, and thus does not support the argument that the prosecutor improperly cross-examined Butler about other homicides.

In sum, Rodney has failed to show plain error with respect to any of his unpreserved allegations of prosecutorial misconduct, and the prosecutor's cross-examination of Butler did not violate the trial court's ruling or deprive Rodney and Butler of a fair trial.

## IV. JURY INSTRUCTIONS

---

[8] Butler moved for a mistrial on this basis, arguing that Butler was prejudiced when the prosecutor began to discuss the "statements that were in Rodney's phone" in the presence of the jury. The prosecutor responded that the argument was not improper and that any prejudice could be alleviated by a curative instruction, which the trial court was willing to give. However, none of defendants requested a special instruction, and there was no objection to the failure to provide an instruction.

Rodney and Clifford argue that the trial court erred by instructing the jury to reread the instructions on transferred intent and conspiracy in response to a jury question seeking clarification on the intent required for the murder charge. However, counsel for both Rodney and Clifford expressed satisfaction with the jury instructions that were given, thereby extinguishing any error and waiving review of this claim. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). In particular, both Rodney and Clifford expressed satisfaction with the trial court's final instructions, which included instructions on transferred intent and conspiracy. Then, in response to the jury's question regarding the intent for murder, Rodney's counsel suggested that the court instruct the jury to "follow the law," and then approved the trial court's suggestion that it instruct the jury to reread the instructions on transferred intent and conspiracy. Clifford's counsel also agreed that it would be "correct" for the court to instruct the jury to reread the instruction on transferred intent. See *id*. By approving the trial court's response, Rodney and Clifford waived this claim. Their waivers extinguished any error, leaving no error to review. See *Carter*, 462 Mich at 216.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Rodney argues that trial counsel was ineffective for (1) not properly preparing to cross-examine the prosecution's arson expert, (2) not challenging the qualifications of the arson expert, (3) failing to consult with an expert to provide data showing the location of Rodney's phone at the time of the fire and that he was texting with his girlfriend at the time of the fire, (4) failing to object to the prosecutor's conduct discussed in section III, (5) failing to object to the jury instruction on transferred intent, (6) failing to object to Detective Sullivan's testimony that none of Butler's four statements were recorded when, in fact, only one statement was not recorded, and (7) failing to object to Morgan testifying in prison clothing. Both Rodney and Butler also argue that their counsel was ineffective by failing to request an instruction under MCL 763.9 with respect to the failure to record Butler's statement. Butler also argues that his counsel failed to effectively cross-examine Wolfe with respect to why the police considered him to be a prime suspect.

A *Ginther*[9] hearing was not held in this case, meaning that our review is limited to mistakes apparent on the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). "To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *Id*. at 140. "[T]he defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id*. The burden is on the defendant to show the factual predicate for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

The record is devoid of evidence regarding Rodney's counsel's preparation for questioning the expert and the alleged evidence in support of the defense theory. Rodney has not produced any factual support for his claim that his attorney was unprepared or that evidence showed that Rodney was not in the area of the fire at the time it was set. Further, regardless of

---

[9] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

whether Rodney actually committed the underlying arson, it was undisputed that Rodney was criminally charged with that offense. Thus, Rodney had a motive to kill Ryan because Ryan intended to testify that Rodney was involved in that offense.

Rodney also announces, without argument, that counsel was ineffective for failing to object to the prosecutor's conduct addressed in section III, *supra*. Given our conclusion that the prosecutor's conduct was not improper, counsel was not ineffective by failing to object. Counsel is not required to make a meritless argument or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Rodney also argues that counsel was ineffective for failing to "object to the handling of the jury instructions." Presumably, Rodney is referring to counsel's agreement with the trial court's response to the jury's question regarding the requisite intent for murder, in which the court instructed the jury to reread the jury instructions on conspiracy and transferred intent. Rodney's argument that the trial court's response only further confused the jury is not supported by the record. Indeed, the court advised the jury that if its response did not resolve the jury's question, the jury should send out another question. The jury did not send out any additional questions regarding the instruction. On this record, Rodney has not shown that counsel performed unreasonably or that counsel's failure to object to the jury instructions affected the outcome of the trial.

Rodney also complains that counsel failed to object when Detective Sullivan "lied to the jury" and told them that none of Butler's four statements had been recorded. The record does not factually support this argument. Detective Sullivan testified that Butler's December 16 statement was not recorded, but Sullivan did not testify that all of Butler's statements were not recorded. To the contrary, Detective Sullivan testified that Butler's December 11 statement was recorded. Rodney has not established that Detective Sullivan lied to the jury and, in any event, Rodney has not explained how this purported lie affected the outcome of the proceedings.

Next, Rodney complains that counsel failed to object when Morgan testified while wearing prison clothes. Rodney makes no attempt to explain why such an objection would have had merit, much less explain how it would have changed the outcome of his trial. Indeed, assuming that Morgan did indeed testify while wearing prison clothing, Rodney has not overcome the presumption that counsel's failure to object was reasonable trial strategy considering that Morgan was a prosecution witness.

Rodney and Butler both maintain that their respective attorneys were ineffective for failing to request that the trial court instruct the jury that interrogations for major felonies must be recorded, MCL 763.8, and that the jury could consider the failure to record Butler's December 16 statement when evaluating the evidence in this case, MCL 763.9.

MCL 763.9 provides:

> Any failure to record a statement as required under section 8 of this chapter or to preserve a recorded statement does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines

that the statement is otherwise admissible. However, unless the individual objected to having the interrogation recorded and that objection was properly documented under section 8(3), the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement.

Section 8, MCL 763.8, provides, in relevant part:

(1) This section applies if the law enforcement agency has audiovisual recording equipment that is operational or accessible as provided in section 11(3) or (4) or upon the expiration of the relevant time periods set forth in section 11(3) or (4), whichever occurs first.

(2) A law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation. A major felony recording shall include the law enforcement official's notification to the individual of the individual's Miranda rights.

(3) An individual who believes the individual's interrogation is being recorded may object to having the interrogation recorded. The individual's objection shall be documented either by the individual's objection stated on the recording or the individual's signature on a document stating the objection. If the individual refuses to document the objection either by recording or signature, a law enforcement official shall document the objection by a recording or signed document. A major felony recording may be made without the consent or knowledge of, or despite the objection of, the individual being interrogated.

Rodney's and Butler's argument fails because MCL 763.9 provides an exception when the individual being interrogated objects to having the interrogation recorded and the objection is properly noted. The record discloses that Butler did not want the December 16 statement recorded. Rodney does not claim that Butler's objection was not properly noted. Although Butler asserts that the detectives did not properly document his objection, the record is silent on this issue. Because the absence of proper documentation is not apparent from the record, this claim of ineffective assistance of counsel cannot succeed. Moreover, even assuming counsel could have succeeded on a request for such an instruction, we are not persuaded that the absence of this instruction affected the outcome of the proceedings.

Lastly, Butler argues that his counsel failed to effectively cross-examine Wolfe about his statements and behavior that caused the police to initially consider him a suspect. However, the fact that Wolfe was initially a suspect, and the reasons supporting that suspicion, were thoroughly explored at trial. Butler fails to explain how additional cross-examination of Wolfe would have affected the outcome, especially in light of the other evidence of Butler's guilt, including DNA evidence. Because the jury was clearly apprised of Wolfe's initial status as a primary suspect and the reasons for that suspicion, Butler has failed to demonstrate that counsel

performed below an objective standard of reasonableness and that there was a reasonable probability that cross-examination on this subject was reasonably likely to change the outcome.

## VI.  ADMISSION OF BUTLER'S STATEMENT

Butler argues that the trial court erred by denying his motion to suppress his December 16 statement.  During this interview, police assured Butler that the interview was not being recorded and one of the detectives expressly told Butler: "I'm not intending to use anything you say against you."  After receiving these assurances, Butler provided a detailed confession to the murder.  On appeal, Butler argues that police cannot advise someone of their rights but then offer false assurances that what the person says will not be used against him because this type of "subterfuge makes a mockery out of the Fifth Amendment and *Miranda*."  According to Butler, his statement was obtained in violation of *Miranda* and his statement was involuntary because it was given based on false assurances that it would not be used against him.

We review the trial court's ultimate decision on a motion to suppress de novo.  *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011).  Likewise, voluntariness and whether an accused has knowingly and intelligently waived his rights are reviewed de novo.  *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005).  However, the trial court's factual findings are reviewed for clear error.  *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013).  "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made."  *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001).  "To the extent we find that constitutional error has occurred, we review preserved issues of constitutional error to determine whether they are harmless beyond a reasonable doubt."  *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014) (quotation marks, citation and alteration omitted).  "A constitutional error is harmless if [it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *Id.* (quotation marks and citation omitted).

"In *Miranda,* the United States Supreme Court held that the Fifth Amendment's prohibition against compelled self-incrimination requires that the accused be given a series of warnings before being subjected to custodial interrogation."[10]  *Elliott*, 494 Mich at 301 (quotation marks omitted).

> The now-familiar *Miranda* warnings require the police, before a custodial interrogation, to inform a suspect (1) that he has the right to remain silent, (2) that anything he says can and will be used against him in court, (3) that he has a right to the presence of an attorney during any questioning, and (4) that if he cannot afford an attorney one will be appointed for him. [*People v Daoud*, 462 Mich 621, 625 n 1; 614 NW2d 152, 154 (2000).]

---

[10] In the trial court, there was debate about whether Butler was "in custody" on December 16 so as to require *Miranda* warnings.  See generally *Elliott*, 494 Mich at 302.  However, the trial court did not address this question, and the prosecutor makes no argument on appeal that *Miranda* did not apply to the December 16 interrogation.

The aim of *Miranda* "is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." *Miranda v Arizona*, 384 US 436, 469; 86 S Ct 1602; 16 L Ed 2d 694 (1966). If the custodial interrogation is not preceded by an adequate warning, statements made during the custodial interrogation may not be introduced into evidence at the accused's criminal trial." *Elliott*, 494 Mich at 301. A defendant may waive his or her rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Daoud*, 462 Mich at 633 (citation and quotation marks omitted).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*Id.* (citation omitted).]

In this case, on December 16, at the beginning of the interview, police brought out a waiver card and were going to inform Butler of his *Miranda* rights, but Butler said "Bro, I know my rights." The *Miranda* rights were not read at that time and Butler did not sign the waiver card.[11] Troublingly, it is undisputed that, during this interview, one of the detectives told Butler that "I'm not intending to use anything you say against you." The detectives also assured Butler that the interview was not being recorded, and one of the detectives stated a second time that "it's not my intent to use anything you say against you." After being given these assurances, Butler confessed and described the crime in detail.

Considering the record as a whole, in our judgment, while Butler had previously been informed of his *Miranda* rights and appeared to understand those warnings, the detective vitiated the warnings, and invalidated any waiver of Butler's rights, by expressly contradicting the advice required by *Miranda* and instead telling Butler that he was not intending to use what Butler said against him.

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary

---

[11] Butler had been read his rights at a previous interview a few days before. In these circumstances, given Butler's insistence that he knew his rights, we see no need for the police to have re-read *Miranda* on December 16. See *People v Littlejohn*, 197 Mich App 220, 223; 495 NW2d 171 (1992); *People v Godboldo*, 158 Mich App 603, 606; 405 NW2d 114 (1986).

system—that he is not in the presence of persons acting solely in his interest. [*Miranda*, 384 US at 469.]

Police are not required to provide warnings "in the exact form" set forth in *Miranda*; but, they are required to provide "a fully effective equivalent." *Duckworth v Eagan*, 492 US 195, 202; 109 S Ct 2875; 106 L Ed 2d 166 (1989). Clearly, this requirement is not satisfied when police offer express assurances that vitiate the warnings required by *Miranda*. In other words, "[a] police officer cannot directly contradict, out of one side of his mouth, the *Miranda* warnings just given out of the other." *State v Pillar*, 359 NJ Super 249, 268; 820 A2d 1 (2003).

We recognize that police are not categorically prohibited from lying to a suspect by, for example, falsely stating that they have evidence he committed the crime. See, e.g., *People v Hicks*, 185 Mich App 107, 113; 460 NW2d 569 (1990). But, there is a grave difference between this sort of lying and when police engage in trickery that wholly undermines the validity of a waiver by depriving "a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran v Burbine*, 475 US 412, 424; 106 S Ct 1135; 89 L Ed 2d 410 (1986). See also 2 LaFave et al, Criminal Procedure, § 6.9(c) n 65 (4th ed.). For example, with regard to the necessity of informing a suspect that anything he or she says can and will be used against the individual, courts have found this advice is vitiated by subsequent police statements indicating that the conversation is "off-the-record," *Pillar*, 359 NJ Super at 268, "confidential," *Spence v State*, 281 Ga 697, 698-700; 642 SE2d 856 (2007), "between us," *Leger v Com*, 400 SW3d 745, 749 (Ky 2013), "between you and me," *Lee v State*, 418 Md 136, 156; 12 A3d 1238, 1250 (2011); *State v Stanga*, 617 NW2d 486, 489, 491 (SD 2000), or that giving a statement will not "hurt" the suspect, *Hart v Attorney Gen of Florida*, 323 F3d 884, 894 (CA 11 2003); *State v Puryear*, 441 NJ Super 280, 298; 117 A3d 1255 (2015). In contrast to the warnings required by *Miranda*, an assurance that the suspect's statements will not be used against him "purports to remove the specter of proving one's own guilt by making a statement." *Pillar*, 359 NJ Super at 273 (quotation marks and citation omitted). See also *Hart*, 323 F3d at 894; *United States v Walton*, 10 F3d 1024, 1030 (CA 3 1993). Thus, these types of misleading assurances that an individual's statement will not be used against him undermine the suspect's ability to knowingly and voluntarily waive his rights because this type of trickery deprives the defendant of the "knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Hopkins v Cockrell*, 325 F3d 579, 584 (CA 5 2003).

Here, even more expressly than in other cases, the detective countermanded *Miranda* and assured Butler on December 16 that he was not "intending to use anything you say against you." Such an overt contradiction of *Miranda* has no place in the interrogation of Butler, and in the face of such a statement we cannot conclude that Butler's subsequent confession following this assurance was a product of a knowing and intelligent waiver of his rights. Cf. *Lee*, 418 Md at 157. In reaching this conclusion, we note that at the *Walker* hearing before trial the detective emphasized his use of the word "intending" and he asserted that he was not trying to make any "definitive black and white" promises about the future, but was instead talking in "real time, right then as we sit there." This seems to suggest that the detective was not misleading Butler because the detective had no immediate intention to use Butler's statements against him and that the detective's statement was therefore permissible because it implicitly acknowledged the possibility that Butler's statements *could* be used against him in the future. However, the clear-

cut reality underlying *Miranda* is that "anything said can *and will* be used against the individual." *Miranda*, 384 US at 469 (emphasis added). To affirmatively represent there is no intention to use the statements against the individual is a derogation of *Miranda* which undermines a suspect's ability to understand his rights and the consequences of abandoning them. Moreover, regardless of how the detective thought his statement should be interpreted, "whether intentional or inadvertent, the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights." *Moran*, 475 US at 423. In short, whatever the detective's motives or internal thought processes, his express assurances gave Butler every reason to think that his statements made during the December 16 interview would not be used against him.[12] Such assurances are not in keeping with *Miranda*, and Butler's waiver of his rights following this statement cannot be considered a knowing and intelligent waiver. Cf. *Lee*, 418 Md at 157. Because Butler's December 16 statement was obtained in violation of *Miranda*, it was not admissible against him at trial as substantive evidence. See *Elliott*, 494 Mich at 301.

Although we conclude that Butler's statement was obtained in violation of *Miranda*, reversal of his convictions is not required because any error in admitting his December 16 confession as substantive evidence against Butler was harmless beyond a reasonable doubt given the untainted evidence of Butler's guilt. See *Henry*, 305 Mich App at 148. First, Butler's DNA was found on the ties used to restrain the victim. Second, Butler told Dale Morgan that he had "just chopped a Bitch up in Jackson." Third, after the interview on January 6, during which Butler was properly mirandized, Butler asked a detective whether the detective thought Butler "was gonna admit to killing her on the record." And, fourth, there were cell phone records placing Butler in Jackson on August 10, though he denied being in Jackson and the Jackson location was outside the phone's "pattern of life." Considered as a whole, this evidence, even without Butler's December 16 confession, was more than enough to allow a rational jury to find beyond a reasonable doubt that Butler killed the victim. Consequently, Butler is not entitled to reversal of his conviction because it is clear beyond a reasonable doubt that a rational jury would have found Butler guilty absent any error in admitting his statement.

## VII. BUTLER'S MOTIONS FOR A MISTRIAL

Butler argues that the trial court abused its discretion by denying his motions for a mistrial on four separate occasions. We review a trial court's decision denying a motion for a mistrial for an abuse of discretion. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). To the extent that Butler's claims may be deemed unpreserved because he failed to make a timely request for a mistrial, our review is limited to plain error affecting Butler's substantial rights. *Carines*, 460 Mich at 763.

---

[12] Indeed, Butler was told that the police were interested in finding out about the involvement of the victim's fiancé, Eric Wolfe, because Wolfe had a daughter and they were concerned about the daughter's safety. Coupled with the assurances that the detective did not intend to use his statements against him, Butler had ample reason to believe that the sole purpose of the interview was simply to ensure the safety of Wolfe's daughter.

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant . . . and impairs his ability to get a fair trial." *Haywood*, 209 Mich App at 228 (citation omitted). Butler simply asserts that error occurred and provides a citation to the record in each instance. He fails to adequately brief his arguments and fails to cite any authority in support of his arguments. These arguments are not properly presented for appellate review. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Even if we considered his arguments, we would conclude that he is not entitled to relief.

First, as explained earlier, the prosecutor provided race-neutral reasons for using peremptory challenges to excuse African-American jurors, which the trial court found were valid, and Butler has not provided any reason for disturbing the trial court's findings on this issue. Second, Butler has not demonstrated that a mistrial was required because of the prosecutor's brief argument on an objection in the presence of the jury. As explained earlier, the prosecutor was responding to the trial court's request to explain the relevance of evidence relating to a phone call between Rodney and a third party, and there is no basis for concluding that the prosecutor's brief argument was prejudicial. Moreover, the trial court offered to provide a curative instruction if requested, but there is no indication that any defendant requested an instruction. Third, Butler was not entitled to a mistrial based on Morgan's allegedly "perjured testimony." As discussed earlier, there has been no showing that Morgan's testimony was false, let alone that the prosecutor knowingly presented false testimony.

Fourth, with respect to Butler's preserved argument that the trial court abused its discretion by denying his motion for a mistrial after an officer, while establishing the chain of evidence for a cell phone seized from Butler, described the evidence tag as including the case type "HOM," it is not apparent that the jury would have understood those letters as referring to a homicide case, and the prosecutor did not attempt to explore the meaning of "HOM." *People v Waclawski*, 286 Mich App 634, 709; 780 NW2d 321 (2009). Moreover, the officer's brief mention of "HOM" involved an unresponsive, volunteered remark. *Id*. at 709-710. We also note that the trial court offered to provide a curative instruction if requested, but Butler's counsel did not request an instruction. Under these circumstances, reference to "HOM" did not impair Butler's ability to get a fair trial, and the trial court did not abuse its discretion by denying Butler's motion for a mistrial.

## VIII. CLIFFORD'S MOTION FOR A MISTRIAL

Clifford argues that the trial court abused its discretion by denying his motion for a mistrial after the prosecution cross-examined Butler about his involvement in other, unrelated homicides that did not involve Clifford. As previously discussed, the risk of prejudice from the admission of this evidence was alleviated by a proper cautionary instruction. There is no reason to conclude that the jury was not capable of following the trial court's instruction that this evidence could not be considered against Clifford, especially considering that this evidence did not implicate Clifford in the other homicides and the trial court specifically advised the jury that

the evidence had nothing to do with Clifford.  Given these circumstances, the trial court's denial of Clifford's motion for a mistrial was not an abuse of discretion.[13]

Affirmed.

/s/ Mark J. Cavanagh
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

---

[13] In asserting that the trial court erred by denying his request for a mistrial, Clifford challenges, in a roundabout way, the trial court's pre-trial rulings regarding the admissibility of Butler's statement as substantive evidence against Clifford and Rodney. As an evidentiary matter, the trial court relied on MRE 804(b)(3), and Clifford does not challenge the trial court's evidentiary decision on appeal.  Instead, Clifford argues that the trial court erred by admitting Butler's confession because the detectives failed to provide Butler with an effective *Miranda* warning. Further, Clifford argues that the trial court erred by finding that Butler's confession was nontestimonial and admitting it as evidence against Clifford despite Clifford's confrontation clause objections.  Clifford argues that these erroneous pre-trial rulings prompted Butler to take the stand and that Butler's decision to take the stand led to the admission of the evidence of other homicides committed by Butler.  Thus, Clifford claims that these erroneous rulings should somehow be considered when assessing the trial court's refusal to grant a mistrial based on the evidence relating to Butler's involvement in other crimes.  However, Clifford also expressly concedes that these arguments do not entitle him to relief because Butler testified at trial, thereby alleviating any confrontation clause concerns, *People v Pipes*, 475 Mich 267, 275; 715 NW2d 290 (2006), and because Clifford cannot seek to have Butler's confession suppressed based on a violation of Butler's rights, see *People v Wood*, 447 Mich 80, 89; 523 NW2d 477 (1994) ("As a general rule, criminal defendants do not have standing to assert the rights of third parties."); *Paramount Pictures Corp v Miskinis*, 418 Mich 708, 715; 344 NW2d 788 (1984) ("The Fifth Amendment privilege against self-incrimination is a personal privilege and cannot be asserted on behalf of another.").  Given Clifford's concession on these issues, we need not consider them further and we see no basis for granting relief to Clifford (or Rodney) based on the admission of Butler's confession.

-18-