*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 12, 2020

Plaintiff-Appellee,

v

No. 348295
Oakland Circuit Court

ULYSSES LAMARELLIOT GRAVES,

LC No. 2018-267364-FC

Defendant-Appellant.

Before: BOONSTRA, P.J., and CAVANAGH and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and third-degree home invasion, MCL 750.110a(4). Defendant was sentenced, as a third-offense habitual offender, MCL 769.12, to 13 to 30 years' imprisonment for the carjacking conviction, 6 to 20 years' imprisonment for the AWIGBH conviction, and 3 to 10 years' imprisonment for the third-degree home invasion conviction. We affirm.

## I. FACTUAL BACKGROUND

This action arises from a carjacking that occurred in Madison Heights, Michigan, in 2018. At approximately 3:00 a.m., the victim finished working an overnight shift at a manufacturing plant. After leaving work, the victim stopped at a friend's house. After leaving her friend's house, the victim pulled out of a neighborhood and stopped at a stop sign. Defendant was hitchhiking at the corner of the intersection and offered to pay the victim to drive him to his mother's house. The victim needed money for gas, and agreed to drive defendant.

The victim drove defendant to his mother's house and parked on the side street in front of the house. Defendant told the victim he had to go inside the house to get money so that he could pay her for driving him. Defendant did not mention to the victim that, although he lived in his mother's house, a personal protection order (PPO) had been entered against him, prohibiting him from being in contact with his mother. While inside the house, defendant ran into his mother's room and stole her purse. Defendant's mother was sleeping and woke up when defendant ran in the room. Defendant told his mother, "I got [sic] to do this, he's trying to kill me," and ran out

-1-

with her purse. Defendant's mother had an envelope in the purse containing approximately $1,000, as well as a bottle of pain medication.

After approximately six or seven minutes, the victim saw defendant walk outside with the purse. The victim noticed defendant was walking quickly. Defendant got in the victim's car and urgently ordered her to drive away from the house. The victim assumed defendant stole the purse and told him she would not drive him anywhere else. The victim asked defendant to get out of her car. Defendant responded by punching the victim in the side of the head multiple times. Defendant reached over, opened the driver's side door, and attempted to push the victim out of the driver's seat. Defendant failed to get the victim out of the driver's seat because she was wearing her seatbelt. Defendant lifted his left leg into the driver's seat area, put the victim's car in drive, and attempted to drive the car with the victim still seated in the driver's seat.

The victim was dazed and unable to stop defendant as he drove her car onto a service drive and made a left turn. Defendant struggled to control the car and struck a curb, which flattened the front passenger-side tire. Defendant attempted to continue driving, but the victim managed to put her foot on the brake, causing the car's tires to spin and emit smoke. The victim told defendant she would drive him wherever he wanted to go if he would stop trying to drive the car from the passenger seat. Instead of responding, defendant parked the car in a subdivision, unbuckled her seatbelt, and pushed her out of the car. Defendant was straddling the center console of the car and did not have both feet on the driver's side. Before defendant could move fully into the driver's seat, the victim crawled into the car and took her keys out of the ignition. The victim attempted to throw the keys so that defendant could not take them, but defendant struck her wrist, causing the keys to fall only a few feet away from the car. Defendant crawled through the driver's side, stepped on the victim, and grabbed the keys. Defendant then grabbed the victim by the throat and began strangling her and punching her in the face. Defendant stopped punching the victim after several moments and drove away in her car, leaving the victim stranded in the road.

The victim was treated at a nearby hospital for severe injuries to her head and throat. While the victim was being treated at the hospital, police officers received a tip that her car had been located. A police officer responded to the tip and found defendant and the victim's car at a nearby donut shop. Defendant was arrested. As previously stated, defendant was convicted by a jury of carjacking, AWIGBH, and third-degree home invasion. Defendant was sentenced, as a third-offense habitual offender, MCL 769.12, to 13 to 30 years' imprisonment for the carjacking conviction, 6 to 20 years' imprisonment for the AWIGBH conviction, and 3 to 10 years' imprisonment for the third-degree home invasion conviction. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support his convictions of AWIGBH, carjacking, and third-degree home invasion. We disagree.

This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. Circumstantial evidence, including reasonable inferences arising from that evidence, may provide

sufficient proof to meet the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

The elements of AWIGBH are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). Along with the general elements of AWIBGH, as set forth in MCL 750.84(1)(a), defendant committed an act of strangulation under MCL 750.84(1)(b). To be found guilty of AWIGBH with strangulation, a defendant must be found guilty of "[a]ssault[ing] another person by strangulation or suffocation." MCL 750.84(1)(b); *People v Barber*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 339452); slip op at 4.

With regard to the crime of carjacking, MCL 750.529a provides:

(1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

(2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

And the elements of third-degree home invasion are: (1) "breaking and entering or entering without permission," (2) into a dwelling, (3) with the intent to commit a misdemeanor or the actual commission of a misdemeanor while inside the dwelling. *People v Crews*, 299 Mich App 381, 393-395; 829 NW2d 898 (2013). A defendant may also be found guilty of third-degree home invasion if he or she violates the following orders:

(*i*) A probation term or condition.

(*ii*) A parole term or condition.

(*iii*) A personal protection order term or condition.

(*iv*) A bond or bail condition or any condition of pretrial release. [MCL 750.110a(4)(b).]

The victim's testimony was sufficient for the jury to conclude that defendant was guilty of AWIGBH with strangulation because she testified that he punched her repeatedly and strangled her. The prosecution also presented photographic evidence of the injuries the victim sustained in the attack. After stealing a purse from his mother, defendant attempted to carjack the victim. The victim's testimony included that defendant repeatedly bludgeoned her over the head, pushed her out of her car, strangled her, and ultimately succeeded in driving away with the car. By using force and violence in the process of stealing the victim's vehicle, a jury could conclude that defendant committed the crime of carjacking. Additionally, evidence was presented to show that defendant

entered his mother's home in violation of a PPO, which ordered defendant to stay away from her. Defendant argues that he was given a key to the house by his nephew, JG, and lived in the house with his mother. However, regardless of defendant's claim that he had permission from his mother to live in the home, he explicitly violated MCL 750.110a(4)(b), and thus committed third-degree home invasion by entering the home in violation of a PPO.

Defendant attempts to cast doubt on the victim's credibility by arguing that her car was a "crack rental" used for drug transactions, and by suggesting that a third person was involved in the incident. First, witness credibility is a matter for the jury to decide, and this Court will not interfere with the jury's determination of the weight or credibility of a witness's testimony. *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004). Second, defendant presents no further evidence regarding the identity of the alleged third person involved in the events leading to his convictions, other than a vague statement he made to his mother when taking her purse. Ultimately, when viewed in the light most favorable to the prosecution, the evidence was sufficient to support defendant's convictions of AWIGBH, carjacking, and third-degree home invasion.

## III. ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to: object to the prosecution's leading of a minor witness; conduct a thorough pretrial investigation and call defendant as a witness; and object to the scoring of two offense variables (OVs). We disagree.

Generally, when examining a defendant's claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017). However, defendant failed to properly preserve the issue by moving for a new trial or a *Ginther*[1] hearing in the trial court; therefore, our review is "limited to mistakes apparent on the record." See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is presumed to be effective, *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), and defendant must be able to "overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).

Defendant first argues that he was denied the effective assistance of counsel because defense counsel failed to object to the prosecution's use of leading questions during the examination of a minor witness, JG. However, defendant provides no explanation or authority to support the argument that the line of questioning pursued by the prosecution constituted "leading the witness," to which defense counsel should have objected. Thus, this portion of defendant's issue is deemed abandoned on appeal. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2004) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). However, even if such questioning did amount to leading the witness, the prosecution correctly observes that minor witnesses may be asked leading questions. Indeed, this Court has stated, "a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Moreover, MRE 611(d)(1) allows for leading questions to be asked on direct examination if they are necessary to allow for proper development of a witness's testimony. Here, the prosecution utilized a minute number of leading questions to fully develop JG's testimony. An objection was not appropriate and defense counsel is not required to raise a meritless or futile objection. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Further, decisions regarding whether and when to object to a line of questioning is a matter of trial strategy, which this Court will not second-guess on appeal. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). Defense counsel may have wished to avoid being accused of frivolously objecting to testimony, or of badgering a minor witness by repeatedly objecting to the prosecutor's testimony, which would have called negative attention to defendant. In summary, defendant has not established the factual predicate for his claim, and further, he has presented no evidence showing he was prejudiced by defense counsel's failure to object.

Second, defendant argues that defense counsel was ineffective for failing to conduct a proper pretrial investigation and call him as a witness. Defendant contends that, had defense counsel conducted a proper pretrial investigation, he would have realized it was imperative to call defendant to the stand to testify on his own behalf, and counsel's failure to do so deprived defendant of the opportunity to present a defense. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citation omitted). However, defendant offers no proof showing that defense counsel failed to engage in proper pretrial investigation. The mere fact that defense counsel did not call defendant as a witness does not prove defense counsel was unprepared for trial or that he did not present a competent defense on defendant's behalf. Additionally, "[w]hen asserting ineffective assistance of counsel premised on counsel's unpreparedness, a defendant must demonstrate prejudice resulting from the lack of preparation." *People v Bosca*, 310 Mich App 1, 37; 871 NW2d 307 (2015). Defendant has presented no evidence that defense counsel's alleged lack of preparation prejudiced him, nor does he explain how his testimony would have changed the outcome of the case.

Moreover, defendant formally waived his right to testify on the record after voir dire by the trial court. "Generally speaking, a defendant who waives a right under a rule cannot then seek appellate review of a claimed deprivation of that right." *People v McDonald*, 303 Mich App 424, 429; 844 NW2d 168 (2013). Since defendant waived the right to testify, defense counsel was not ineffective for failing to call defendant as a witness. Further, defense counsel's failure to call defendant as a witness did not deprive defendant of his right to present a competent defense. Defense counsel argued that defendant was not properly identified as the perpetrator of the crimes and that he was wrongfully accused by the victim. Defendant has not shown that the failure to call him as a witness deprived him of a substantial defense, and thus, defendant failed to show that he was deprived the effective assistance of counsel.

Third, defendant argues that defense counsel was ineffective for failing to object to the scoring of OV 10 and OV 13; however, defendant merely states his belief that he was deprived of the effective assistance of counsel without further elaboration or argument. Defendant's failure to fully brief this argument renders it abandoned on appeal. As previously stated, "[a]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Harris*, 261 Mich at 50. Accordingly, this Court need not address the issue on the merits. Additionally, since there was no discernible error in the scoring of the OVs, as discussed below, defense counsel's failure to object cannot be considered ineffective assistance of counsel. See *Snider*, 239 Mich App at 425 (the failure to make a meritless or futile objection does not constitute ineffective assistance of counsel). In summary, defendant has failed to show that he was denied the effective assistance of counsel.

## IV. SENTENCING

Defendant argues that the trial court erred in its assessment of five points under OV 10, and 25 points under OV 13. Defendant also contends that he is entitled to remand for correction of the PSIR. We disagree.

The trial court's factual determinations pertaining to the scoring of the OVs "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Gloster*, 499 Mich 199, 204; 880 NW2d 776 (2016). Clear error exists when the Court is "left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

## A. OV 10

Five points are scored under OV 10 if "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious . . . ." MCL 777.40(1)(c). Although specific testimony regarding defendant's and the victim's respective heights and weights is not included in the record, the testimony indicates that defendant, a man, clearly exploited the female victim using his greater strength to overpower her and steal her car. The evidence shows defendant punched the victim repeatedly, pushed her out of her car, stepped on her, and strangled her. Defendant had greater physical strength than the victim, and used it to his advantage to effectuate the carjacking. See *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008). Under these circumstances, the trial court correctly assessed five points for OV 10.

## B. OV 13

Under OV 13, 25 points are assessed if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person . . . ." MCL 777.43(1)(c). "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Defendant argues that the trial court incorrectly scored OV 13 at 25 points because it considered defendant's three convictions

for AWIGBH, carjacking, and third-degree home invasion as separate crimes rather than viewing the events leading to his convictions as one "sentencing offense," within the meaning of MCL 777.43(2)(a). However, this Court has previously opined, "multiple concurrent offenses arising from the same incident are properly used in scoring OV 13 . . . ." *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013). Defendant committed three separate crimes against persons as part of the same incident; accordingly, OV 13 was properly scored at 25 points. Additionally, as the prosecution correctly observes, defendant was previously convicted of unarmed robbery within five years of the sentencing offense. Defendant was also convicted of domestic violence, as well as assault and battery within five years of the sentencing offense. Thus, even if this Court were to consider defendant's convictions in the present case as one "sentencing offense" under OV 13, defendant committed a series of crimes against persons within a five-year period that would justify scoring OV 13 at 25 points.

Defendant briefly argues that he was not sentenced on the basis of a properly calculated minimum sentencing guidelines range because the trial court improperly assessed five points under OV 10 and 25 points under OV 13. However, as discussed above, the trial court did not err in its scoring of OV 10 and OV 13; thus, defendant was sentenced within the appropriate minimum sentencing guidelines range and is not entitled to resentencing.

## C. PSIR CORRECTION

Defendant also argues that remand is necessary to correct errors in the PSIR. At sentencing, defendant raised an objection to two pieces of information in the PSIR. First, defendant noted the PSIR incorrectly stated that he denied being prescribed Xanax and Vicodin. Defendant asked for the PSIR to be corrected to reflect that he did not deny having prescriptions for Xanax and Vicodin. Second, the PSIR indicated defendant's half-brother is employed as a school vice-principal, but defendant's half-brother is deceased. Defendant asked the trial court to correct the PSIR to show his half-brother is deceased. The prosecution argues on appeal that remand is unnecessary because the PSIR has since been corrected. Defendant does not refute that claim. Since the PSIR has been corrected, remand is unnecessary and the issue is moot because defendant has received the relief he requested. See *People v Jones*, 317 Mich App 416, 431-432; 894 NW2d 723 (2016) (citation omitted).

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello

-7-