*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. R. SIMONETTA, Minor.

FOR PUBLICATION
February 24, 2022
9:20 a.m.

No. 357909
St. Clair Circuit Court
Family Division
LC No. 19-000333-NA

Before: GLEICHER, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

GLEICHER, C.J.

The circuit court terminated respondent-mother's parental rights to her daughter, MS, without providing reasonable efforts aimed at reunification. The issue presented is whether respondent's prenatal use of opioids and marijuana permitted petitioner to withhold services on the ground that the child had been subjected to an "aggravated circumstance," specifically "severe physical abuse." MCL 722.638(1)(a)(*iii*).

Maternal drug use does not give rise to an aggravated circumstance permitting the termination of parental rights under any circumstances because a fetus is not a "child" under the Probate Code. The circuit court additionally erred by construing the evidence as consistent with "severe physical abuse." We vacate the order terminating respondent's parental rights and remand for continued proceedings.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Six days after MS's birth in November 2019, the Department of Health and Human Services (DHHS) filed a petition seeking to terminate respondent's parental rights at initial disposition under MCL 712A.19a(2). This subsection of the Probate Code excuses the DHHS from providing reasonable efforts intended to reunify a parent and child if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, . . . MCL 722.638." MCL 712A.19a(2)(a). The petition alleged that a laboratory report revealed that MS's meconium was positive for opiates and tetrahydrocannabinol (THC), and that respondent had admitted to using marijuana and taking a "Norco" for a toothache before MS's birth. The DHHS contended that by using those substances, respondent engaged in "severe physical abuse" of MS under MCL 722.638(1)(a)(*iii*), which lists

-1-

as an aggravated circumstance "[b]attering, torture, or other severe physical abuse." The petition further alleged that respondent previously had been involved in a Children's Protective Services (CPS) action during which she voluntarily released her parental rights to twins.

A referee conducted an adjudication trial at which Dr. Xinyue Pan, a pediatrician, testified regarding MS's newborn condition and care. Dr. Pan verified that MS's meconium reflected exposure to two different opioids and THC.[1] When the laboratory reported these findings MS was immediately removed from her mother's room and placed in a special care nursery for "at least five days for monitoring of withdrawal symptoms." Dr. Pan's working diagnosis was "neonatal abstinence syndrome." She explained that babies withdrawing from opioids are "scored" according to different "symptoms." MS's scores were low, "usually one to five" out of an upper limit of 15, and she did not require any medication or medical interventions of any kind.

Dr. Pan did not offer any specific testimony regarding MS's symptoms of opioid withdrawal. And although Dr. Pan testified that narcotic exposure in utero can lead to developmental delays and "mental health issues," the record contains no evidence that MS sustained any perceptible injury whatsoever, either during her hospitalization or subsequently. To the contrary, MS's father and aunt testified that she is doing well and has no special needs.

Despite that no evidence substantiated that MS had been "severely abused," the circuit court terminated respondent's rights without requiring the DHHS to provide her with services. Compounding this error, neither the circuit court nor the referee who conducted the original termination hearing made a specific finding that aggravated circumstances existed. On appeal, respondent contended that reasonable efforts at reunification were required because aggravating circumstances had not been established. This Court affirmed the circuit court, concluding that "respondent's consumption of marijuana and opiates while pregnant . . . resulted in a life-threatening injury." *In re A S-K Simonetta*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2021 (Docket No. 354081), p 5 (*Simonetta I*).

Respondent filed a handwritten application for leave to appeal in the Supreme Court. In a brief order, the Supreme Court vacated the part of the Court of Appeals' decision "holding that the trial court made the requisite judicial determination that respondent subjected [MS] to the circumstances provided for in MCL 722.638(1) and (2), and satisfied the requirements of MCR 3.977(E) necessary to terminate the respondent's parental rights without requiring reasonable efforts at reunification." *In re A S-K Simonetta*, 507 Mich 943; 959 NW2d 170 (2021) (*Simonetta II*). The Court noted that pursuant to *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), "[r]easonable efforts to reunify the child and family must be made in all cases except those involving the circumstances delineated in MC: 712A.19a(2)." *Simonetta II*, 507 Mich at 943. The Court therefore ordered the circuit court on remand to "either order that the petitioner provide

---

[1] Respondent testified that the second opioid detected (hydromorphone) resulted from the administration of Dilaudid before her caesarean section. Unfortunately, respondent's counsel neglected to obtain her medical records, did not call a witness to verify her testimony, and did not question Dr. Pan about the possibility that the medical administration of Dilaudid accounted for the second opiate.

reasonable services to the respondent, or articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required." *Id*.

On remand the circuit court found that respondent had "abused [MS] by ingesting multiple opiates and THC during her pregnancy," and that the infant's neonatal abstinence syndrome diagnosis, "the withdrawal, and the potential lifelong complications of the exposure to multiple controlled substances constituted severe physical abuse caused by Respondent's drug use." Accordingly, the circuit court determined that reasonable efforts at reunification were not warranted.

Respondent again claimed an appeal. Her appointed appellate counsel filed a four-page brief in this Court. Despite the Supreme Court's order directing the parties' attention to whether respondent had subjected MS to aggravated circumstances under MCL 722.638(1) and (2), respondent's counsel raised no legal argument regarding aggravated circumstances or the failure to provide services. Instead, counsel's argument centered on the *petition*, not the evidence, offering only these two barely comprehensible sentences: "The petitioner then argues that petitioner [sic] is continuing to have issues with substance abuse and mental health. Those are not issues listed in the statute justifying immediate termination without offering services." That's it.

Notwithstanding appellate counsel's grossly inadequate briefing, we hold that respondent's drug abuse during her pregnancy and the ensuing harm to the child do not rise to the level of severe physical abuse. More importantly, maternal drug use does not give rise to "aggravated circumstances" under MCL 722.638 because this statute applies to "severe physical abuse" of a "child," and a fetus is not a "child" as that term is defined in the Probate Code or the Child Protection Law, MCL 722.621 *et seq*. A parent does not come within MCL 722.638 based on pre-delivery conduct, as such conduct is not, by definition, "abuse" of a "child."

## II. THE LEGAL FRAMEWORK

The Legislature has expressed an unmistakable preference that the DHHS offer services to every parent at risk of losing parental rights. Services typically include drug treatment, psychological evaluation and support, and housing assistance. The reasonable efforts mandate is intended to reinforce and to accentuate the DHHS's goal: reunification. Withholding reasonable efforts is a narrowly drawn exception to the legislative preference that the DHHS actively engage with parents to keep families together.

"Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances[.]" *Mason*, 486 Mich at 152 (cleaned up). Absent aggravating circumstances, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the [DHHS] must create a service

plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86.[2]

"Aggravated circumstances" are limited to six events or occurrences in the life of a "child." MCL 722.638(1)(a) provides that "aggravated circumstances" exist when a parent "has *abused* the *child* . . . and the abuse included 1 or more of the following":

> (*i*) Abandonment of a young child.

> (*ii*) criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

> (*iii*) Battering, torture, or other severe physical abuse.

> (*iv*) Loss or serious impairment of an organ or limb.

> (*v*) Life threatening injury.

> (*vi*) Murder or attempted murder. [*Id*. (emphasis added).]

Most of these circumstances are likely to be the subject of criminal prosecutions. They represent demonstrably violent or indisputably abusive conduct that causes long-lasting harm. The record does not support that MS sustained *any* consequences of respondent's prenatal use of controlled substances. But that is not the only reason that § 638(1) does not apply here. MCL 722.638(1)(a)(*iii*) does not apply to the "abuse" of a fetus because a fetus is not a "child" as that term is defined in the criminal law or the juvenile code.

### III. A FETUS IS NOT A "CHILD" UNDER THE PROBATE CODE

Aggravated circumstances justifying a petition seeking termination of parental rights at initial disposition under MCL 712A.2 are triggered when a parent "has abused the child" in one of the ways delineated in MCL 722.638(1)(a). That statute is part of the Child Protection Law, MCL 722.621 *et seq*., which defines "child" as "a person less than 18 years of age." MCL 722.622(f). Similarly, the Michigan adoption code under the Probate Code defines "child" as "an individual less than 18 years of age." MCL 710.22(j). Neither of these definitions contemplate that a fetus is a "child."

In *People v Jones*, 317 Mich App 416; 894 NW2d 723 (2016), this Court thoughtfully considered whether a statute criminalizing child abuse, MCL 750.136b(2), applied to a mother

---

[2] Many opinions issued by this Court incorrectly state that the DHHS "is not required to provide reunification services when termination of parental rights is the agency's goal." See, e.g., *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013), quoting *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). Such statements are contrary to *Mason*, *Hicks/Brown*, and *In re Rood*, 483 Mich 73, 98-100; 763 NW2d 587 (2009), and should be viewed as inaccurate abbreviations of governing precedent.

who used methamphetamine while pregnant and delivered an infant with serious medical problems. In that statutory context (the Michigan Penal Code), the word "child" is defined as "a person who is less than 18 years of age and is not emancipated by law . . . ." MCL 750.136b(1)(a). The statute's definition of "person" is limited to the individual committing the abusive act. MCL 750.13b(1)(d). This Court noted that the definition of "child" "does not refer to fetuses or to conduct that harms a fetus," concluding that "neither the definition of 'child' nor the definition of 'person' found in the statute specifically includes fetuses." *Jones*, 317 Mich App at 422. The Legislature *has* criminalized conduct that specifically harms fetuses, *Jones* points out, in several other statutes. *Id*. at 424-426. "And the Legislature has consistently refrained from expanding the definition of person to include fetuses." *Id*. at 429.

In light of the appearance of the word "fetus" in a number of civil and criminal laws, the Legislature's omission of a fetus from the Probate Code's definition of "child" should be viewed as purposeful. Aside from the definition of "child," other interpretive guides support that the Legislature did not intend that MCL 722.638 would apply to fetuses.

The individual words of a statute should be read holistically "with a view to their place in the overall statutory scheme." *Davis v Mich Dep't of Treasury*, 489 US 803, 809; 109 S Ct 1500; 103 L Ed 2d 891 (1989). See also *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 351; 952 NW2d 384 (2019) ("This interpretation reflects a holistic reading of the statutory text and gives each provision its appropriate meaning and function."); *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 367-368 917 NW2d 603 (2018) ("However, we do not read statutory language in isolation and must construe its meaning in light of the context of its use."). When construed together, the aggravating circumstances identified in MCL 722.638(1)(a)(*iii*)—"battering, torture, or other severe physical abuse"—apply to children living outside the womb. In a broader context, the other aggravating circumstances captured in MCL 722.638(1)(a) also pertain to children who have been born, and not fetuses: "abandonment," "criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate," "loss or serious impairment of an organ or limb," "life threatening injury," and "murder or attempted murder."

This interpretation of the plain language of MCL 722.638(1)(a) coincides with that of the Children's Protective Services Manual (CPSM), PSM 711-4 (February 1, 2017), p 2, available at <https://dhhs.michigan.gov/OLMWEB/EX/PS/Public/PSM/711-4.pdf#pagemode=bookmarks> (accessed January 25, 2022), which defines a "child" as "[a] person under 18 years of age," and further provides: "Parental substance abuse, positive toxicology or withdrawal in an infant does not in and of itself indicate that child abuse or neglect has occurred or that the infant has been severely physically injured." CPSM, PSM 716-7 (September 1, 2020), p 6, available at <https://dhhs.michigan.gov/OLMWEB/EX/PS/Public/PSM/716-7.pdf#pagemode=bookmarks> (accessed January 25, 2022). The manual advises that "[s]ubstance abuse is a mental health disorder and caseworkers should assist the parent/caregiver in accessing relevant supports and services." *Id*. at 1. This corresponds to MCL 712A.2's mandate that reasonable efforts be provided to parents who have not harmed their children in any of the ways delineated in § 638(1)(a), thereby acknowledging that those parents may benefit from skilled intervention and care.

By excluding fetuses from the definition of a "child," our Legislature has recognized that drug use during pregnancy does not automatically mean that a mother will abuse her child after

birth. CPS has reached the same conclusion. Ironically, MS's father was a respondent when the child was taken into care, and at that time faced a felony drug charge and had a long history of substance abuse including heroin, methamphetamine, and marijuana use. After receiving extensive services, he was deemed capable of caring for MS. The DHHS's obvious inconsistency regarding parental drug abuse smacks of gender bias.

Aggravated circumstances do not exist in this case as a matter of law, supporting vacation of the termination of respondent's parental rights on that ground alone.[3]

## IV. THE EVIDENCE DOES NOT SUPPORT "SEVERE PHYSICAL ABUSE"

The usual standard of proof in termination of parental rights cases is a preponderance of the evidence. But to justify termination of parental rights at initial disposition and without reasonable efforts at reunification, a court must find "on the basis of clear and convincing legally admissible evidence" that the facts alleged are true, establish at least one statutory ground for termination, and that termination is in the child's best interests. MCL 3.977(E)(3).

The record does not contain clear and convincing evidence that MS was "severely abused." As discussed above, the DHHS failed to introduce any evidence supporting that respondent's opioid use harmed MS. Rather, the evidence demonstrates that MS was placed in a special care nursery only after her meconium tested positive for opioids, not because she exhibited signs or symptoms of neonatal abstinence syndrome. And if MS did in fact have such symptoms, the DHHS failed to place them in evidence.

The record strongly supports that the DHHS's decision to deny respondent services was based on respondent's previous voluntary termination of her parental rights to her twins (an improper basis for denying services) and a desire to punish respondent for her drug use. According to the CPSM, PSM 711-1 (November 1, 2013), p 1, available at <https://dhhs.michigan.gov/OLMWEB/EX/PS/Public/PSM/711-1.pdf#pagemode=bookmarks> (accessed January 25, 2022), however:

> The purpose of [CPS] is to ensure that children are protected from further physical
> or emotional harm caused by a parent or other adult responsible for the child's
> health and welfare and that families are helped, when possible, to function

---

[3] We acknowledge that *In re Rippy*, 330 Mich App 350, 357-359; 948 NW2d 131 (2019), this Court upheld a termination of parental rights at the initial disposition based on an assumption that a mother's prenatal drug use was an aggravated circumstance. However, the majority in *Rippy*, 330 Mich App at 359 n 2, declined to consider whether a "fetus" falls within the definition of a "child" as contemplated in MCL 722.638(1), and therefore reached no binding opinion on that question. Although neither trial nor appellate counsel specifically preserved the issue in this case, we may exercise our discretion to address it. This is a matter of statutory interpretation that we review de novo and the facts necessary to our resolution are of record. See *Frericks v Highland Twp*, 228 Mich App 575, 585; 579 NW2d 441 (1998); *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 311; 497 NW2d 595 (1993).

responsibly and independently in providing care for the children for whom they are responsible.

The Legislature shares this goal. By requiring reasonable efforts to reunify families except in circumstances in which a child has been severely harmed by deliberate post-delivery conduct, the statutes governing child welfare proceedings recognize that the ultimate objective of the law is to strengthen families, not to tear them apart. And it should go without saying that a policy of terminating parental rights based on maternal drug abuse only discourages pregnant women from seeking prenatal care.

Respondent is entitled to receive services designed to help her combat her drug use, to assist her in locating safe housing, and to allay the other concerns that surfaced before her rights were punitively terminated and her needs never addressed.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello